## CORBIT *v.* SMITH.

Where a party seeks to convert a deed of real estate, absolute on its face, into a mortgage, by a parol contemporaneous agreement, that it was received as a mere mortgage, and that he was to have the right to redeem, the evidence should be clear, satisfactory, and conclusive, and not be made up of loose and random conversations with respondent.

Parol testimony to establish a trust, or to make a conveyance absolute upon its face, a mortgage, against the answer of a respondent, should be clear, and even then received with great caution.

Where mental unsoundness becomes a subject of inquiry, in relation to the execution of a conveyance of real estate, the rule is, that a very modified degree of incapacity will be sufficient to invalidate the deed, if the transaction is accompanied with fraud, imposition, or an over-exercise of authority.

A party who is actually insane, or a lunatic, cannot bind himself civilly ; and where the insanity is proved, all questions as to the validity of contracts made by the lunatic during the period of insanity, is at an end.

Where what is termed *habitual* insanity, or that which is in its nature, continuous and chronic, is once shown to have existed, the presumption is in favor of its continued existence to the time of the contract, and the burden of proof is upon those seeking to prove the contrary.

Where habitual insanity is not established, the presumption is, that the party, like all human creatures, was rational; and the fact of the existence of a prior period of lunacy, will not throw the burthen of proof upon the party setting up the competency of the lunatic.

In determining the order of proof and presumption, reference must be had to the peculiar circumstances connected with the insanity—upon its character, whether habitual, and apparently confirmed, or only temporary, and not continuous.

*Appeal from the Henry District Court.*

WEDNESDAY, OCTOBER 20.

IN CHANCERY.    Smith loaned to Corbit some fourteen

hundred dollars, and as security therefor, received a deed of trust upon certain real estate. The money was not paid. Smith was about to sell under the trust deed, when Corbit, in consideration of the money so loaned, with interest, and the further sum of one hundred and thirty-three dollars, made an absolute conveyance, or what purported to be such, to Smith. This bill is filed to set aside this deed, and to allow complainant to redeem. The cause was heard upon bill, answer, replication, exhibits, and a great number of depositions. Decree in favor of respondent, and complainant appeals. The facts will be found in the opinion of the court.

*C. Ben Darwin*, for the appellant.

*Hall, Harrington & Hall*, for the appellee.

WRIGHT, C. J.—The position of appellant, that the deed was intended as a mortgage, is not sustained by the proof. The only testimony to this point, is of certain admissions made by, and conversations had with, respondent. There is a want of definiteness and certainty, however, in the proof—so much so, as to render it quite unsafe to rely upon it. The deed is absolute upon its face. Complainant relies upon a parol contemporaneous agreement, that it was received as a mere mortgage, and that he was to have the right to redeem. To establish such an agreement, his proof should be clear, satisfactory, and conclusive, and not be made up of loose and random conversations with respondent. Witnesses are so liable to forget, or unwittingly misrepresent, or mistake such conversations, that their testimony should, as a general rule, be received with great caution. Indeed, all parol testimony against the answer of a respondent, to establish a trust, or to make a conveyance, absolute upon its face, a mortgage, should be clear, and even then, received with great caution. *Boyd* v. *McLean*, 1 Johns. Ch., 582; *Blair* v. *Bass*, 4 Blackf., 539. In this case, the testimony of com-

plainant upon this point, is far from being clear or satisfactory. In addition to this, respondent proves by one witness—and he the agent of complainant in conducting the sale—that it was absolute, and that there was no agreement or understanding that there was to be a redemption.

Nor do we think that the charge, that the deed was obtained by fraud, and the use of undue and improper influences, sustained by the proof. It is stated in the bill, and attempted to be shown, that the price paid was grossly inadequate, and thus fraud is attempted to be established. The testimony, however, when all considered, so far from showing this inadequacy, satisfies us that the price paid was reasonable, and even more than any other person would then have paid. It appears that complainant was at the time confined in jail, and intrusted one Stephens with the sale of the land. Previous to this time, he had been to California, and had selected one Smith to make sale of his land. Both of his agents made efforts to make a sale—offered the land to a great number of persons—but found no one who was willing to give as much as respondent finally paid. Then, the witnesses who speak of the value of the land, leave it probable, to say the least of it, that it sold for its full value. Some, it is true, give it a much greater value, while others place it at less. The fact, however, that it was in market for several months; that efforts were made in good faith by Stephens and Smith, the agents of complainant, to sell it for the best price possible; that they could not succeed in selling it for as much as was paid by respondent—to our minds conclusively rebuts the position, that the price paid was so inadequate as to raise the presumption of fraud in procuring the deed.

The testimony tending to show the use of undue and improper influences in procuring the deed, is exceedingly slight, and by no means sufficient to satisfy us of the fraud charged. It is true that respondent was about to sell under his trust deed. It appears, however, that respondent first loaned to complainant one thousand dollars, in August

Corbit v. Smith.

1851, to be paid in August, 1852, to secure which, he took a mortgage upon the land in controversy. Afterwards, in January, 1852, Corbit, desiring to go to California, solicited a further loan, which he received, making, with the amount secured by the mortgage, the sum of over fourteen hundred dollars. Respondent cancelled the mortgage, took a deed of trust, and extended the time of payment to January 15, 1853. The testimony, so far from showing that the respondent unduly hastened or pressed the collection of his debt, by a forced sale of the land, rather shows that he preferred his money, and desired that the land should be sold to some third person, by private sale, if the money could not be otherwise raised.

Then, again, while some of the witnesses testify, that respondent was present in the jail at the time the deed was made, and persuaded complainant to execute it, his presence is expressly denied by the testimony of other witnesses. And then, if present, it is not shown that he made any false representations, or indeed, that he said anything to induce complainant to do different from what he would otherwise have done. It is not established, in a word, that complainant was influenced in the least by any thing said or done by respondent. In view of the fact that complainant was at the time imprisoned—that respondent was his creditor, holding the land by deed of trust, under which he had advertised to sell—and that complainant was, to say the least of it, of doubtful mental capacity to contract, the respondent should be held to the utmost good faith. When there is nothing, however, to impeach the fairness and integrity of the transaction—where there is nothing to show that respondent has taken advantage of complainant's condition, or his own power as a creditor, it will not do to declare the deed void for fraud, or on account of the use of undue and improper influences. The complainant had an agent acting for him, who negotiated the sale. The deed was acknowledged before a magistrate who had frequently transacted business for complainant, and who wrote the deed and acknowledged it, at his re-

quest. The deed was signed in the presence of this agent, the magistrate, complainant's wife, and several other persons. It is not shown that respondent had, previous to this time, conversed with complainant, or used any means to induce him to make the sale. If he conversed with him at the time, the conversation consisted of but few words. After the sale, the complainant received the remaining portion of the purchase money; and, indeed, all the circumstances, to our minds, rebut even any presumption of fraud, and are in entire accordance with, and may be regarded as even affirmatively sustaining, the utmost good faith.

We have suggested that it was doubtful whether complainant had sufficient capacity to contract, at the time the deed was made; and herein lies the important point in the case, and the one principally relied upon to sustain the bill. Did he have a contracting mind at the time the deed was made? is the question to which the great mass of the testimony is directed, and to it we now give attention.

And first, as to the law. The contest is as to the validity of the particular act, or the capacity of the complainant to execute the deed. Where mental unsoundness becomes a subject of inquiry in such a case, the rule is, that a very modified degree of incapacity will be sufficient to invalidate, if the transaction is accompanied with fraud, imposition, or any over-exercise of authority, (Medical Jurisp. by Whart. and Slitle, section 1); or, as was said in *Lord Portsmouth's case*, weakness of mind, where circumvented by fraud, would be sufficient to invalidate even so solemn a contract as that of marriage. 1 Hagg. Ec. 355.

In the next place, a distinction is to be borne in mind between contracts *executed* and contracts *executory*. The latter, the courts will not, in general, lend their aid to execute where the party sought to be affected, was at the time incapable, unless it may be for necessaries. If, on the other hand, the incapacity was unknown—no advantage was taken—the contract has been executed, and the parties can-

not be put in *statu quo*—it will not be set aside. The latter rule is said to be the tendency of the more recent American authorities; while formerly, the leaning in this country, was in favor of the doctrine, that the contracts of a lunatic, whether executed or unexecuted, were *per se* void, unless for necessaries. W. & S. Med. Jur., sec. 11; 4 Barr., 375; 10 Ib., 56.

If the rule above stated as to executed contracts, obtains as an exception to the general rule, that the contract of a lunatic is void *per se*, we submit that it must be upon the ground, that the property which is the subject of the contract, cannot be restored, and that it is impossible to place the parties in *statu quo*. For certainly, it would seem, that if the contract is voided upon the ground that the party had not a contracting mind, and the wrong can be made right—the property restored—the parties placed in *statu quo*—it can make but little difference in a court of conscience, whether the question arises upon an executed or executory contract. If the court cannot, because of the circumstances surrounding a case, administer justice—set aside the contract and restore the parties to their original position—does it therefore follow that it will not do so, upon an executed contract where no such obstacles exist? It seems to us not. In the case of an application to set aside a deed, where the grantee was insane, ordinarily the property can be restored, complete justice done, and the parties placed as they were; and hence it is said, fairness, innocence, and fullness of consideration, are necessary to validate it. 5 Rawle, 11; 5 Wheat., 37; W. & S. Med. Jur., sec. 11.

But what must be the mental condition of the person, in order to avoid the contract? A party who is actually at the time insane, or a lunatic, cannot bind himself civilly. And hence, if this is once proved, all question is at an end. The difficult inquiry, generally, in such cases, relates to the fact of *time*. Where what is termed habitual insanity, or that which is in its nature continuous and chronic, is once shown to have existed, the presumption is in favor of

its continued existence to the time of the contract, and the burthen of proof is upon those seeking to prove the contrary. If this habitual insanity is not established, the presumption is that the party, like all human creatures, was rational; and the fact of the existence of a prior period of lunacy, will not throw the burthen of proof upon the party setting up the competency. In determining the order of proof and presumption, reference must be had to the peculiar circumstances connected with the insanity—upon its character, whether habitual, and apparently confirmed, or only temporary, and not continuous. *Hix* v. *Whittlemore*, 4 Met., 545; Jarm. on Wills, 65; *Harrison* v. *Rowan*, 1 Wash. C. C., 580; *Jackson* v. *Vandever*, 5 Johns., 134; 8 Shep., 46; W. & S. Med. Jur., sec. 33.

Again, it has been said, that where a rational act has been done in a rational manner, such is the strongest and best proof which could arise as to a lucid interval. This rule has, however, been by a learned judge so far questioned, as to place it in this form: that while a rational act done in a rational manner, is entitled to great weight, and does contribute to the establishment of a lucid interval, yet it is not the strongest and best proof. 1 Jarm. on Wills, 65; *Barmantine* v. *Barmantine*, 16 Jur., 864; 14 English, 581. It is believed, however, that upon this subject, the authorities agree, that if no extraneous influence was exerted, the character of the act itself, will go far to determine the capacity of the party at the time. *Stewart* v. *Lispenard*, 26 Wend., 255; *Means* v. *Means*, 5 Strobh., 167; *Roberts* v. *Frawick*, 13 Ala., 68; *Couch* v. *Couch*, 7 Ala., 519.

Having said so much as to the law, we now come to consider the testimony tending to show the condition of the complainant at the time he signed the deed. It is claimed that at the time, he was laboring under the nervous disease of epilepsy, and that when he signed the deed, he was, as a consequence of such disease, insensible, unconscious, and even in convulsions. Writers upon this subject inform us that this disease seldom continues for any length of time,

Corbit v. Smith.

without destroying the natural soundness of the mind, rendering the patient listless and forgetful, indisposed and unable to think for himself, yielding, without any will of his own, to every outward influence, and finally sinking into hopeless fatuity, or becoming incurably maniacal. Ray's Med. Jur. of Insanity, sec. 379. The paroxysm may continue for minutes, hours or days. Where the disease is not of long duration, it is not of such a character as to amount to what we have spoken of as habitual insanity ; and hence, in such a case, while the condition of the party should be closely scrutinized, the presumption is not in favor of the continuance of the incapacity to the time of the contract, and what may be regarded as the opposite rule prevails ; and that is, that if insensibility or unconsciousness is not shown to exist at the time, the presumption is that the party, like all human creatures, had sufficient capacity. Between the paroxysms, the party may have sufficient capacity, and make as valid and binding a contract as though never affected. If they have been violent, frequent in their returns, and have continued for any considerable length of time, incapacity to contract might result, and the jury or court might be justified in treating the epileptic as habitually insane.

If the complainant in this case was at any time undeniably subject to this disease, it is left doubtful, to say the least of it, whether he was thus afflicted prior to the hour of making the deed. Certain it is, that it had not at that time so grown upon him as a disease, as to permanently destroy the natural soundness of his mind—rendering him listless or forgetful, or unable to think for himself. Prior to this time, he had been accustomed to attend to business as other persons. He had conversed with his agent as to the disposition of the land—the making of the deed—the terms of the contract ; and up to a very short time before the justice obtained his signature to the deed, there is nothing strongly or fairly indicating that he had not a sound and contracting mind. Subsequent to this time, while the testimony shows a return of these paroxysms, it also ap-

pears that he has had what is termed lucid intervals, and engaged in business in about the same manner as before.

His prior condition had not, therefore, been such as to indicate anything like habitual insanity. The claim is, however, that he was actually at the very time of signing the deed, suffering from a paroxysm so violent as to render him entirely insensible and unconscious. This is expressly denied by the answer. The burden of proof is, therefore, upon the complainant. No presumption of previous habitual insanity exists in his favor. He affirms—and he must, therefore, prove. The presumption is in favor of his capacity, and it is his duty to maintain by sufficient proof, this affirmative proposition—otherwise his action must fail.

Upon this subject, the testimony is very conflicting. Indeed, we have seldom known a case where it was more so. If the witnesses all speak of the same transaction, and have reference to the same time, the conclusion is irresistible that some of them have sworn false. And yet this is not claimed by either party, and there is believed to be nothing in the entire transaction to sustain such a supposition. All of the witnesses appear to speak candidly and intelligently. The conflict exists, however, and is most clear and palpable. The witnesses for complainant state, that he was wild and raving; striking his head with great force against the wall of his cell; that his arms were rigid; that he was speechless, or at least did not talk; his eyes motionless; and that the justice took his hand and guided it, while he made his mark to the signature written for him to the deed. On the other hand, respondent's witnesses testify that nothing of the kind transpired; that he conversed fully and intelligently upon the subject; that they noticed nothing indicating insensibility or unconsciousness; but that the deed was executed with perfect freedom, and when there was the entire absence of anything like pain or suffering. So, we repeat, that if the witnesses refer to the same transaction, the difference in their statement is so marked and palpable, that there is no room for the supposition, that one or the other may be mistaken in

Corbit v. Smith.

their impressions, but some of them must have sworn falsely. Under such circumstances, it is the duty of a court to reconcile their testimony, if it can be done upon any fair and reasonable hypothesis. Can this be done in this case ?

The leading witnesses upon the part of complainant, were, at the time the deed was made, living in the jail— being the jailor, his wife and children. They were there before, and after the deed was executed. They speak of seeing the complainant frequently when laboring under such paroxysms. The witnesses on the part of respondent were never together in the jail with complainant, at any other time than when this deed was made. They went there for the purpose of having this very deed signed and acknowledged. If they are honest and entitled to credit, their testimony must determine the facts, for they cannot possibly be mistaken as to what took place at that time. There is no other time or transaction that they could confound with this. There was but one sale—but one deed— but one acknowledgment—but one meeting in the jail; and to this deed—this sale—this acknowledgment—and this meeting, they refer. If at that time, complainant was in the condition stated by the jailor and his family, there is no escaping the conclusion, that respondent's witnesses were guilty of the very grossest perjury. And they were not only guilty of perjury, but one of them, the confidential and accredited agent and friend of the complainant, in negotiating this sale, was guilty of the most unblushing and fiendish fraud and cruelty, in permitting the deed to be signed when the grantor was a raving maniac ; and the other, as a justice of the peace, entrusted with taking the acknowledgment, was guilty of double perjury, when he certified that the grantor, at the time insane, executed the deed freely and voluntarily. Such a conclusion we cannot adopt. But prefer to adopt the hypothesis, that the complainant's witnesses refer to some other time, and that they are honestly mistaken in connecting his condition as described by them, with the time of executing this deed.

The opposite conclusion fixes perjury upon the respondent's witnesses, from which there is no reasonable escape, whereas, this conclusion makes all their statements consistent, and probably truthful.

Not without some difficulty, we conclude, therefore, that this portion of complainant's bill is not sustained by the testimony, and that the decree below must be affirmed.