## ASHCRAFT ET AL. v. DE ARMOND ET AL.

1. **Practice in the Supreme Court:** TRIAL DE NOVO: EVIDENCE TO BE IN WRITING. An equitable action will not be tried *de novo* in the Supreme Court upon the certificate of the trial judge that the abstract contains all the evidence introduced on the trial. It must appear either that a motion was made at the appearance term that the case be tried upon written evidence, with a certificate of the judge that the record contained all the evidence, or that, as a matter of fact, the evidence was reduced to writing, in pursuance of an order of record made at the appearance term.

2. **Insanity:** CONVEYANCE: EVIDENCE. Where it was sought to set aside a conveyance on the ground of the insanity of the grantor, and it appeared that the insanity had been of slow and steady growth, it was *held* that evidence respecting the mental condition of the grantor at a period subsequent to the time of the execution of the conveyance was competent.

3. ———: RUMORS: EVIDENCE. Rumors in the neighborhood of the party alleged to be insane respecting his mental conditon are not admissible in evidence.

4. **Equity:** CONVEYANCE: INSANITY. Equity will not interfere to set aside a conveyance, on the ground of the insanity of the grantor, to one who shall have purchased in good faith and for value, in ignorance of the mental condition of the grantor.

5. ———: NOTICE. A purchaser will not be affected by notice of an equitable claim, if he purchase from a vendor who himself bought *bona fide* without notice.

### *Appeal from the Keokuk Circuit Court.*

### TUESDAY, OCTOBER 3.

JACOB ASHCRAFT was the owner in fee of 221 acres of land, upon which he and Elizabeth his wife had for many years resided. In 1869 they sold said land to their son, T. E. Ashcraft, for an agreed consideration of $3,000, to be secured by mortgage on all the premises excepting sixty acres. This sixty acres, which included the homestead, was to be conveyed back by T. E. Ashcraft to his mother, Elizabeth, and to his brother, Albert Ashcraft, jointly. On account of some difficulty with his wife, T. E. Ashcraft had the conveyance from

his father and mother made to one Hargrave, and procured Hargrave to convey the sixty acres to said Albert Ashcraft alone, and not to him and his mother jointly. As to the other land, T. E. Ashcraft refused to have a mortgage made as stipulated, but a subsequent arrangement was made which was satisfactory to the parties, and the sixty acre tract is all that is now really in controversy.

Albert Ashcraft conveyed the said sixty acres to W. A. Jordan, now deceased, and said Elizabeth Ashcraft joined in the conveyance, which was by general warranty deed, and afterward the said Jacob Ashcraft conveyed said sixty acres to Jordan, by a quit-claim deed. In January, 1871, Jordan conveyed the sixty acres, with some other land, to Robert De Armond. This action was commenced by Jacob and Elizabeth Ashcraft, by her next friend, to set aside the several conveyances, alleging that, at the time of the conveyance to Hargrave, which was in March, 1869, and at the time of the conveyance of the sixty acres to Jordan, which was in November, 1870, both plaintiffs were old, infirm, of unsound mind, imbecile, and unable to contract; that T. E. Ashcraft, Albert Ashcraft, R. M. Hargrave, and W. A. Jordan, all well knew the mental condition of plaintiffs, and confederated together to cheat and defraud plaintiffs out of their farm. They further allege that, when De Armond purchased, he had full knowledge and actual notice of all said fraud, and of said bodily and mental infirmities.

W. B. Jordan, the administrator of W. A. Jordan, deceased, and Robert De Armond answered, denying each and every allegation of fraud; admitting that, at the dates stated, plaintiffs were old and not more than ordinarily intelligent, but denying that, at said dates, either of them were of unsound mind, imbecile, or unable to contract; alleging that, when said W. A. Jordan, deceased, purchased said sixty acres, he paid full value, and had no notice or knowledge the plaintiffs had any claim thereon, and that when said De Armond purchased the same he paid full value, and had no notice or knowledge of plaintiffs' claim, or of any fraud or unsoundness of mind.

There was trial by the court, and there was a decree dismis-

sing the petition of Jacob Ashcraft on its merits, and dismissing the petition of Elizabeth Ashcraft on its merits as to all the land, excepting the said sixty acres; as to this, she was decreed to be the absolute owner in fee simple of an undivided one-half. And it was further decreed that said Elizabeth be restored to her homestead right in forty acres of said sixty acres, and that the deed by said Elizabeth to Hargrave, and her deed to W. A. Jordan, deceased, be set aside so far as they purport to convey any title or interest of said Elizabeth. The defendants, Jordan and De Armond, appeal.

*Woodin & McJunkin* and *C. G. Johnson*, for appellants.

*S. W. Simmons* and *Mackey & Donnell*, for appellees.

ROTHROCK, J.—This is an equitable action triable *de novo* in this court, provided the parties have taken the steps necessary to entitle them thereto. The abstract purports to give all the evidence introduced on the trial, and the judge of the court certifies it is all the evidence introduced in said case, and that he signs the certificate to the end that the evidence may be made a part of the record. It is also agreed that the case may be tried on appellants' abstract, without transcript.

*1. PRACTICE in the Supreme Court: trial de novo: evidence to be in writing.*

The Code, Sec. 2742, provides that, "if any party shall, at any time during the appearance term, move the court for a trial upon the written evidence, the court shall either order all the evidence to be taken in the form of depositions, or shall cause all the evidence offered on the trial to be taken down in writing, to be certified by the judge and made a part of the record, according to the requirements of the motion. In either of such cases, all the evidence so taken shall go on appeal to the Supreme Court, which shall try the case anew."

If the motion be not made and the evidence taken in writing, as thus provided, the Supreme Court shall try only the legal errors duly presented. Code, Sec. 2741.

It is not claimed by appellee that the appellants' abstract does not contain all the evidence, but it is claimed that, as no motion was made during the appearance term to have the

evidence in writing, and the court did not cause all the evidence to be taken down in writing, the case is not triable anew in this court.

We cannot ignore these provisions of the statute. If parties desire that their cases shall assume such a position in the court below as to entitle them to a trial anew in this court, upon appeal, the statute is plain and explicit as to what is required. We do not say that no presumptions will be indulged by this court as to the action of the court below. If it should appear from the court record that the court ordered the evidence to be reduced to writing by a commissioner or short hand reporter, or other person, we would presume that one of the parties made the motion required by statute, or if it should appear that the motion was properly made and the court should certify that the record before us contained all the evidence, it would then be fair to presume that the court did what the statute required and ordered the evidence to be taken down in writing. But no such presumption can be indulged in this case. It neither appears that the motion was made, nor that the court took any action in the matter, and for aught that does appear, the evidence may have been reduced to writing from the recollection of counsel without being taken down on the trial.

Counsel for appellant have made special assignments of error, and we will examine the case on the alleged "legal errors duly presented."

II. It is not claimed in argument that Jacob Ashcraft was not of sound mind at the date of the execution of the 2. INSANITY: deed to Hargrave. There is no evidence tending conveyance: evidence. to show his insanity, and indeed he was a witness and was examined at length as to the sanity of his wife Elizabeth. The main question of fact in the case was the mental capacity of Elizabeth Ashcraft. The first deed made by her, was dated March, 1869. Appellants complain that evidence of the insanity of said Elizabeth was permitted to be given down to as late a period as the fall of 1874. A number of witnesses were called as to the state of her mind, and they gave a particular account of her acts and conduct from a

Ashcraft v. De Armond.

period prior to the date of the deed, down to a very recent point of time before the trial. It is not denied that at the time of the *trial* her reason was gone, and she was totally incapacitated for any intelligent action. Her insanity seems to have been of slow growth, running back through some eight or ten years. Under these circumstances, we are not prepared to say that it was improper to show her condition of mind through the whole period inquired about. It was part of the history of her case, to be known throughout in order to form an intelligent judgment as to her condition at the time of executing the deeds. It would be otherwise if her insanity were temporary in its nature, as where it was occasioned by the violence of disease, or where she was subject to lucid intervals. In our opinion there was no error in the court permitting this testimony to be given.

III. The court permitted the plaintiffs against defendants' objection to prove the rumors or neighborhood reports of the insanity of plaintiff. In this we think there was error. Insanity is to be proved like any other fact, and rumor, resting as it does in hearsay and based on conclusions, is wholly inadmissible for any purpose. It will not do to hold that defendants had notice of the condition of plaintiff by reason of public rumor.

3. ———: rumors: evidence.

The plaintiff propounded to said Jacob Ashcraft, a non-expert, the following question:

"From what you know personally, from the appearance, language and actions of Elizabeth Ashcraft, state whether you considered her capable of making a contract or transacting important business at the time she made the deed to Jordan?"

*A.* "She then had not sufficient mind for that purpose."

In this there was error. This question and answer embraced the whole merits of the case, and if relied on by the court, left nothing to be done but record the opinion of the witnesses as the judgment of the court.

Conceding that a witness who is not an expert may give an opinion as to the sanity or insanity of a party at a fixed time, based on facts and circumstances given by the witness, yet we know of no rule extending further than this. This precise

point as to the competency of this interrogatory and answer has been determined by this court. See *Pelamourges v. Clark*, 9 Iowa, 1, and cases there cited.

IV. The court found that Elizabeth Ashcraft had not sufficient mental capacity to contract at the dates of both the deeds executed by her, and that her sons took advantage

4. EQUITY: conveyance: insanity. · of her want of capacity and by the exercise of undue influence over her procured the conveyance to be made to Hargrave. But it is further found that W. A. Jordan, deceased, paid full value for the sixty acres in question, and at the time of his purchase had no actual knowledge of any fraud, or of the mental condition of said Elizabeth. The evidence fully supports this last finding, and yet the court held the conveyance to Jordan to be void on the ground, we suppose, that Elizabeth was at the time of his purchase in possession of the premises. If Jordan was an innocent purchaser, we must presume that he knew that, although Elizabeth was in possession, yet, she had joined her husband in a conveyance of this very land to Hargrave, thus extinguishing all right of homestead. Not knowing of her want of capacity to contract, he, Jordan, took from her a second conveyance to himself. We are at a loss to understand why his title should be held invalid. Not knowing that Elizabeth was wanting in mental capacity, and having innocently taken her conveyance, it surely cannot be said that as to him there were any further equities of which her possession would serve to give him notice, or put him on inquiry.

This court, in *Corbit v. Smith*, 7 Iowa, 60, said: "In the next place a distinction is to be borne in mind between contracts *executed* and contracts *executory*. The latter the courts will not in general lend their aid to execute where the party sought to be affected was at the time incapable, unless it may be for necessaries. If, on the other hand, the incapacity was unknown—no advantage was taken—the contract has been executed, and the parties cannot be put in *statu quo*—it will not be set aside." And see, also, to the same effect, *Behrens v. McKenzie*, 23 Ib., 333. It is clear that as Jordan was a good faith purchaser, and paid full value, he, or rather his

estate, cannot be placed in *statu quo*.  No offer or effort is made to that end.

V.  It was found by the court below that defendant, Robert De Armond, when he made his purchase of Jordan knew of 5. ——: notice. the general rumor that Mrs. Ashcraft was losing her mind, and that he took the advice of the party who took the acknowledgment of the deed to Hargrave, as to whether she had sufficient capacity to make a deed.  De Armond paid full value so far as we are advised from the evidence.  Now it will be borne in mind that it is not claimed De Armond was a party to the original fraud; it is charged that he had notice of the fraud and a want of capacity in Mrs. Ashcraft. The evidence as to notice to him is not clear and convincing, and yet it is sufficient if that were all the difficulty in the way to sustain the decree.  But he was a purchaser from Jordan, and as we have seen, Jordan was a good faith purchaser for a full consideration without notice.  The doctrine in regard to notice is that it does not affect a title derived from another person, in whose hands it stood free from any such taint.  A purchaser will not be affected by notice of an equitable claim, if he purchase from a vendor who himself bought *bona fide* without notice.  Kerr on Fraud and Mistake, 316, and authorities there cited; and see *McQueen v. Furquhar*, 11 Vesey, 467; *Lacey v. Wilson*, 4 Munf., 313; *Fannor v. Sayre*, 2 Ala., 458; *Holmes v. Stout*, 3 Greene's Chan., 492; *City Council v. Page*, Spear's Chan., 159; *Lindley v. Rankin*, 4 Bibb., 482.

Applying this rule to this case and the conclusion is inevitable that notwithstanding notice to De Armond he stands in the place of Jordan, invested with all his rights, and has the right to the same protection against equities, and the plaintiff is entitled to no greater relief than if Jordan had never conveyed the legal title.

VI.  We might say further and in conclusion that the evidence as to the mental capacity of Elizabeth Ashcraft at the times of making the deeds is not altogether clear.  Her condition was such that W. A. Jordan, and even De Armond, might well have been misled in reference thereto, and all the

evidence rebuts the idea that Jordan had any reason to suspect a want of capacity when he took her conveyance. The case is one of peculiar hardship and arouses our strongest sympathies, as we have no doubt it did with the learned judge who tried the case in the court below, and yet duty demands that we administer the law as it is, regardless of resulting hardships in exceptional cases. The decree and judgment of the court below will be reversed, and the cause remanded for a new trial.

REVERSED.