## NOAH GRIBBEN, *as Guardian of Olive E. Gribben,* v. SAMUEL E. MAXWELL.

INSANE GRANTOR; *Conveyance not Avoided, when:* Where a purchase of real estate from an insane person is made, and a conveyance is obtained in perfect good faith, before an inquisition and finding of lunacy, for a fair and reasonable consideration, without knowledge of the insanity, and no advantage is taken by the purchaser, the conveyance cannot be avoided by the insane person, or one representing him, if the consideration has not been returned to the purchaser, and no offer has been made to return the same.

### *Error from Cowley District Court.*

ACTION brought December 7, 1883, by *Noah Gribben,* as guardian of Olive E. Gribben, a lunatic, against *Samuel E. Maxwell,* to set aside a conveyance executed by Olive E. Gribben on June 11, 1883. The petition, among other things, alleged that on June 11, 1883, the said Olive E. Gribben, being a lunatic, made, executed, acknowledged and delivered to the defendant a quitclaim deed for three-sevenths interest of the east half of the northeast quarter of section 15, and the south half of the northwest quarter of section 14, all in township No. 34 south, of range 4 east, in Cowley county, in this state. The defendant filed an answer, the second defense of which was as follows:

"That he purchased of the said Olive E. Gribben the lands described in said petition in good faith; that he paid to the said Olive E. Gribben for said lands the sum of three hundred and fifty dollars, lawful money of the United States; that the said sum of money paid for said lands as aforesaid, was a fair and reasonable price for the same at the time said purchase was made; that the said defendant had no knowledge or information of the lunacy of the said Olive E. Gribben; that at the said time and before, there was nothing in the looks or conduct of the said Olive E. Gribben to indicate she was of unsound mind, or incapable of the transaction of business; but on the contrary, at the time of said purchase and for a long time prior thereto, the said Olive E. Gribben was apparently in possession of her full mental faculties, and was then and

had been for a long time prior thereto, engaged in the transaction of business for herself.

"Wherefore, the said defendant prays the said petition of the said plaintiff be dismissed, and that the title of the said defendant in and to the said lands be quieted against the claims of the said Olive E. Gribben, and all persons claiming or to claim under, through or by her, and for such other and further relief as to the court may seem equitable."

To the second defense of the answer the plaintiff filed a demurrer, upon the ground that it was insufficient in law to constitute any defense whatever. At the May Term, 1884, the demurrer was overruled. The plaintiff excepted, and brings the case here.

*Hackney & Asp*, for plaintiff in error.

*A. J. Pyburn*, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J. : As a general rule, the contract of a lunatic is void *per se*. The concurring assent of two minds is wanting. "They who have no mind cannot 'concur in mind' with one another; and as this is the essence of a contract, they cannot enter into a contract." (1 Parsons on Contracts, 6th ed., 383; *Powell v. Powell*, 18 Kas. 371.) Notwithstanding this recognized doctrine, the decided cases are far from being uniform on the subject of the liability or extent of liability of lunatics for their contracts. An examination of the cases upon the subject shows that there is an irreconcilable conflict in the authorities. We think, however, the weight of authority favors the rule that where the purchase of real estate from an insane person is made, and a deed of conveyance is obtained in perfect good faith, before an inquisition and finding of lunacy, for a sufficient consideration, without knowledge of the lunacy, and no advantage is taken by the purchaser, the consideration received by the lunatic must be returned, or offered to be returned, before the conveyance can be set aside at the suit of the alleged lunatic, or one who represents him.

Insane grantor; conveyance, when not avoided.

Wright, C. J., in *Corbit v. Smith*, 7 Iowa, 60, thus states the law:

"In the next place, a distinction is to be borne in mind between contracts *executed* and contracts *executory*. The latter, the courts will not, in general, lend their aid to execute where the party sought to be affected was at the time incapable, unless it may be for necessaries. If, on the other hand, the incapacity was unknown — no advantage was taken — the contract has been executed, and the parties cannot be put *in statu quo* — it will not be set aside."

In *Behrens v. McKenzie*, 23 Iowa, 333, Dillon, J., said:

"But with respect to executed contracts, the tendency of modern decision is to hold persons of unsound mind liable in cases where the transaction is in the ordinary course of business, is fair and reasonable, and the mental condition was not known to the other party, and the parties cannot be put *in statu quo*."

In *Allen v. Berryhill*, 27 Iowa, 534, it was decided that —

"Where a contract made by an insane person has been adopted, and is sought to be enforced by the representatives of such person, it is no defense to the sane party to show that the other party was *non compos mentis* at the time the contract was made."

Cole, J., dissenting, expressed his views as follows:

"In every case of contract with a lunatic, which has been executed in whole or in part, the fact that the parties can or cannot be placed *in statu quo*, will have an important bearing in determining whether such contract shall stand. . . . When the parties cannot be placed *in statu quo*, and the contract is fair, was made in good faith, and without knowledge of the lunacy, it will not be set aside, even at the suit of the lunatic. And this, not because the contract was valid or binding, but because an innocent party, one entirely without fault or negligence, might, and in the eyes of the law would, be prejudiced by setting it aside. Both parties are faultless, and therefore stand equal before the law, and in the forum of conscience. The law will not lend its active interposition to effectuate a wrong or prejudice to either; it will suffer the misfortune to remain where nature has cast it."

In *Bank v. Moore*, 78 Pa. St. 407, a lunatic was held liable upon a note discounted by him at the bank; and Mr. Justice

Paxson, in delivering the opinion of the court, said, among other things:

"Insanity is one of the most mysterious diseases to which humanity is subject. It assumes such varied forms and produces such opposite effects as frequently to baffle the ripest professional skill and the keenest observation. In some instances it affects the mind only in its relation to or connection with the particular subject, leaving it sound and rational upon all other subjects. Many insane persons drive as thrifty a bargain as the shrewdest business man without betraying in manner or conversation the faintest trace of mental derangement. It would be an unreasonable and unjust rule that such persons should be allowed to obtain the property of innocent parties and retain both the property and its price. Here, the bank in good faith loaned the defendant the money on his note. The contract was executed, so far as the consideration is concerned, and it would be alike derogatory to sound law and good morals that he should be allowed to retain it to swell the corpus of his estate."

Mr. Pomeroy, in his treatise on Equity Jurisprudence, says:

"In general, a lunatic, idiot, or person completely *non compos mentis*, is incapable of giving a true consent in equity, as at law; his conveyance or contract is invalid, and will generally be set aside. While this rule is generally true, the mere fact that a party to an agreement was a lunatic will not operate as a defense to its enforcement, or as ground for its cancellation. A contract, executed or executory, made with a lunatic in good faith without any advantage taken of his position, and for his own benefit, is valid both in equity and at law. And where a conveyance or contract is made in ignorance of the insanity, with no advantage taken, and with perfect good faith, a court of equity will not set it aside, if the parties cannot be restored to their original position and injustice would be done." (2 Pomeroy's Eq. Juris., § 946, p. 465. See also *Scanlan v. Cobb*, 85 Ill. 296; *Young v. Stevens*, 48 N. H. 133; *Eaton v. Eaton*, 37 N. J. L. 108; *Freed v. Brown*, 55 Ind. 310; *Ashcraft v. DeArmond*, 44 Iowa, 229.)

Applying the law thus declared to the case at bar, the district court committed no error in overruling the demurrer. It appears from the pleadings that the conveyance was executed and delivered before an inquisition and finding of lunacy; that

no offer was made to return to the purchaser his money paid for the conveyance of the land; and the answer sets forth good faith on the part of the purchaser; that he paid a fair and reasonable price for the land; that he had no knowledge or information of the lunacy of Olive E. Gribben, the ward of the plaintiff; that there was nothing in her looks or conduct at the time to indicate that she was of unsound mind, or incapable of transacting business; but on the contrary, that she was apparently in possession of her full mental faculties, and was then and had been for a long time prior, engaged in the transaction of business for herself.

Our attention is called to the case of *Powell v. Powell,* supra, as decisive that the conveyance in question is void; but a consideration of the views above expressed and the authorities cited show that all the reasons to avoid a marriage with a lunatic do not apply in the case of a deed obtained in good faith from a lunatic, executed before an inquisition and finding of lunacy. We have examined fully the authorities on the other side of the question, and especially *In the matter of DeSilver,* 5 Rawle (1835), 110; *Gibson v. Soper,* 6 Gray, 279; *Van Dusen v. Sweet,* 51 N. Y. 378; *Dexter v. Hall,* 32 U. S. 9.

Notwithstanding the recognized ability of the judges rendering these decisions, we are better satisfied with the doctrine herein announced.

The order and judgment of the district court will be affirmed.

All the Justices concurring.