## WARFIELD V. WARFIELD.

1. **Insanity**: DEED BY INSANE PERSON: SETTING ASIDE: TERMS OF. Equity will set aside a deed of lands made by one who is incapable of contracting on account of insanity, when the parties can be be placed *in statu quo*. (See cases cited in opinion.)

2. **Estoppel**: APPLICATION OF DOCTRINE TO PREVENT FRAUD: HUSBAND AND WIFE: INSANITY. About six months after the plaintiff (husband) was married to the defendant he was induced, in consideration of the marital relation, to convey his lands to her. Six months later plaintiff was adjudged insane, and defendant was appointed guardian of his estate, which she took and managed for a period of about six years. During this time defendant procured a decree annulling her marriage with plaintiff, on the ground that he was insane at the time it was celebrated. This decree was procured upon her own testimony with that of others. In this action to set aside the deed of lands, made by plaintiff to defendant above referred to, *held* that defendant was estopped from denying that plaintiff was insane at the time the deed was made, and that it was properly set aside,—the facts being such that the parties could, by a proper accounting, be placed *in statu quo*.

3. **Former Adjudication**: REPORT OF GUARDIAN OF INSANE PERSON. Where the wife of an insane person, prior to the adjudication of his insanity, but while he was in fact insane, procured a deed to his lands, and afterwards was appointed guardian of his estate, the approval by the probate court of her final report as guardian was not such an adjudication as precluded him, in an action to set aside the conveyance, from demanding an accounting of the rents and profits of the land. These were not involved in the guardianship, because the guardian then had the title to the land.

*Appeal from Muscatine District Court.* — HON. WALTER I. HAYES, Judge.

FILED, JANUARY 23, 1889.

ACTION in chancery to cancel and set aside a deed for lands, and for a settlement and accounting for moneys received by defendant as the guardian of plaintiff, appointed by reason of the fact that plaintiff was declared insane. There was a decree granting the relief prayed for by plaintiff. Defendant appeals.

*J. Carskaddan* and *Boal & Jackson*, for appellant.

*L. A. Ellis, D. C. Cloud* and *Dan M. Lambert*, for appellee.

BECK, J.—I. The important and controlling facts of the case, as disclosed by the pleadings and established by the evidence, are, briefly stated, as follows: In

September, 1875, the plaintiff and defendant were married. He had valuable real estate,—a farm near the city of Muscatine. Her father was a man of money and property, and had prior to their marriage loaned the plaintiff several sums of money, amounting in the aggregate to twenty-two or twenty-three hundred dollars. In March, 1876, defendant's father visited her at the farm near Muscatine, where she resided with her husband. During the visit the father induced plaintiff to execute to the defendant a deed to the land in controversy, which was quite valuable. The consideration of this deed and the reason it was executed is the subject of controversy between the parties. Defendant insists that it was made for money advanced by her father to plaintiff before and after marriage, and for money advanced to him before and after the time of the execution of the deed. Plaintiff insists that the deed was intended to convey the undivided one-half of the land to defendant, but, through mistake or fraud of defendant and her father, it was drawn so as to convey the whole. He also insists that the money loaned to him by the father, before the marriage, he had paid, and that a large part of the consideration ($3,000) was to have been subsequently advanced for making improvements on the farm, but it never was in fact paid him. He claims that he received only two thousand dollars in money, and that certain property, as a piano, phætons, etc., given to the wife, entered into the account, but she took it all and kept it after their separation. In September, 1876, plaintiff, in proper proceedings, was adjudged insane, and was sent to the hospital for the insane at Mount Pleasant, where he was kept for about six years and six months; being discharged as cured or convalescent in 1883. The defendant was appointed guardian of the plaintiff, and took charge of his property, and managed it during the whole time of his confinement in the insane hospital. In 1881 defendant instituted proceedings to annul her marriage with plaintiff, on the ground that he was insane at the time it was celebrated. She was a witness

in her own behalf, and, upon the evidence of herself and others supporting the allegations of the petition, the marriage was, in 1882, declared annulled, on the ground that plaintiff was insane when it was celebrated. The defendant continued in charge of plaintiff's property after the decree annulling the marriage, and until the plaintiff was declared *compos mentis*, and capable of managing his own affairs, which was in 1885, after this action was commenced.

II. Plaintiff alleges, as a ground for setting aside the deed, that at the time of its execution he was insane, and for that reason incapable of executing 1. INSANITY: deed by insane person: setting aside terms of. pacity to contract on account of insanity is a sufficient ground for setting aside the deed, if it be found that the parties can be placed *in statu quo*. *Corbit v. Smith*, 7 Iowa, 60 ; *Behrens v. McKenzie*, 23 Iowa, 333 ; *Van Patton v. Beals*, 46 Iowa, 62 ; *Alexander v. Haskins*, 68 Iowa, 73. If it be found that when the deed in question was executed plaintiff was incapable of contracting on account of insanity, and that the parties may be placed *in statu quo*, equity will grant plaintiff relief by setting aside the deed. It cannot be doubted that, as defendant still holds the title to the land acquired under the deed executed by plaintiff, the parties may be placed *in statu quo* by an accounting with defendant for all money received by her from plaintiff, or as the proceeds of his property, and the payment of any balance found due on such accounting, and by the reconveyance by her of the land to plaintiff. We think this proposition cannot be doubted.

III. Does the evidence found in the abstract upon which the case is submitted establish the insanity of plaintiff when the deed to defendant was 2. ESTOPPEL: application of doctrine to prevent fraud: husband and wife: insanity. executed ? We think the facts disclosed conclusively preclude defendant from denying that plaintiff was incapable, on account of insanity, of executing the deed. It will be remembered that plaintiff caused the

marriage contract to be annulled on the ground of plaintiff's insanity when it was entered into. It will not be forgotten that the deed was executed after the marriage, and within a year thereafter the plaintiff was adjudged insane. Defendant was appointed the guardian of plaintiff, and for seven or eight years had charge of his property. Four or five years after the execution of the deed (the precise time is not material) she instituted an action to declare void the marriage between her and plaintiff, on the ground of his insanity when it was celebrated. Upon the testimony she introduced, including her own evidence, the court hearing the case found and adjudged that plaintiff was, when the marriage was celebrated, insane and incapable of entering into the marriage contract. The defendant sought, obtained and enjoyed advantages and benefits of the adjudication. For two or three years after it was had she continued in charge of plaintiff's property as his guardian. For her own benefit, and upon her own procurement, the marriage was annulled on the adjudged ground of plaintiff's insanity when it was celebrated. She accepted, has enjoyed and does not propose to relinquish, any of the benefits she has acquired by the adjudication. Surely, if plaintiff was incapable of entering into the contract of matrimony because of his insanity, he was not capable of making any other contract. This position cannot be questioned. And it cannot be doubted that equity will not permit defendant to annul one contract on the ground of insanity, and enforce another. This is surely so when the two contracts affect the parties in the same relations, and grow out of and are connected with the same relations.

The inducement and the consideration in part of the deed were the marriage relations of the parties. Indeed it cannot, we think, be doubted that the existence of the marriage entered into the consideration of the deed. It was executed according to defendants own theory and evidence, as an arrangement pertaining to the marital relations of the parties. Had no such relations existed, it will not be claimed that the execution of the

deed would have been thought of. Plaintiff, indeed, executed the deed to defendant for the reason that she was his wife. She or her father planned and asked the execution of the deed for that very reason. He advanced the money to plaintiff because of the marriage relation, and induced plaintiff to make the deed because defendant was his wife. Surely if the marriage was in fact void, the deed must be avoided, for the very consideration and inducement upon which it is based—the marriage—never was lawful and valid. It would be a fraud to permit defendant to cause the marriage to be held void, when her interest and desire are promoted and gratified thereby, and to claim and enforce the validity of the marriage in order to retain the title to property acquired by a deed, the consideration and inducement of which are based thereon. By this fraud plaintiff is robbed of the advantages of the marriage and of his land. He loses both wife and lands. It requires no ingenuity to make plain the fraud. The doctrine of estoppel *in pais*, or equitable estoppels, will defeat fraudulent purposes and fraudulent results. It will promote fair dealing, which is the boast and pride of equity. 2 Story, Eq. Jur., secs. 1533, 1543. Surely this doctrine will forbid defendant, after having secured an adjudication of plaintiff's insanity, and thereby gaining a benefit, to turn around and ask the court to adjudge him sane, to the end that she may hold his lands by a fraudulent title. Equity will refuse aid to any attempt so unfair and so fraudulent, and will require defendant to admit in all her dealings with plaintiff that he was incapable of contracting because of insanity at the time the deed was executed.

IV. The parties may be placed *in statu quo*, as we have seen, by payment to defendant of the sum she is shown to be entitled to upon an accounting of money paid and received by defendant on account of plaintiff.

V. We think, and we reach this conclusion after careful consideration of the evidence, that if defendant be credited with all the money which she claims was advanced to plaintiff by her father, amounting to six

thousand dollars, and with other items claimed by her, and be charged, as she should be, with the reasonable rents of the farm, as shown by the evidence, the decree of the district court is too favorable to defendant. We feel sure the defendant upon such accounting would not be entitled to recover the amount allowed her by the decree of the court below, but, as plaintiff has not appealed, the decree cannot be corrected.

VI. Defendant's counsel insist that, as defendant's accounts were approved upon the settlement thereof by the probate court in the proceedings relating to the guardianship, she cannot, in this action, be charged with the rents of the farm and the personal property which came into her hands as guardian. But it is plain that the settlement of the probate court as to the accounts for the rents and profits of the farm cannot control the decision as to the extent of defendant's liability in this case. In that court she claimed the ownership of the land, and the settlement was based upon that claim. She did not account for the rents and profits of the land in the settlement of the guardianship business. In this case plaintiff is adjudged to be the owner of the lands, and defendant is, of course, required to account for its rents and profits. We reach the quite satisfactory conclusion that the decree of the district court ought to be

