S. E. MYERS v. GEORGE KNABE et al.

1. MORTGAGE — *Foreclosure* — *Insanity of Mortgagor* — *Rights of Mortgagee.* A mortgage or conveyance of land, in good faith, for a fair consideration, made by an insane person, to one who has no notice of the insanity, and before any finding of lunacy, will not necessarily be annulled by a mere showing of incapacity; but, before the mortgage or conveyance is set aside, the equitable rights of the mortgagee or grantee will be protected.

2. HEARSAY EVIDENCE — *Error.* The admission of hearsay testimony as to the insanity of a party to a contract sought to be annulled is reversible error.

*Error from Elk District Court.*

ACTION by *Myers* against *Knabe*, by his guardian and others, to foreclose a mortgage. At the October term, 1889, the defendants had judgment, and plaintiff comes to this court. The opinion states the facts.

*L. Scott*, and *Wm. Dunkin*, for plaintiff in error:

The bad faith or fraud of the plaintiff is shown alone by the unproved allegations of false representation of value by the vendor. This is not enough. 1 Wait, Act. & Def., p. 139. See, alse, *Graffenstein v. Epstein*, 23 Kas. 443.

And beyond all this, it will be seen that the whole question of duress rests alone on the evidence of the wife, and she is

an incompetent witness, so far as her husband is concerned. *Anderson v. Anderson*, 9 Kas. 112.

The evidence in this record utterly fails to show any act done by or word that escaped from Knabe, in the presence or hearing of Myers, indicating insanity. The evidence even fails to show that any hint was ever given Myers that any person even suspected an unsound mentality in Knabe. See *Gribben v. Maxwell*, 34 Kas. 8. See, also, *Leavitt v. Files*, 38 Kas. 30.

*R. H. Nichols*, for defendants in error:

Counsel for plaintiff in error argue the question of fraud as if it were an issue between two persons of unquestioned and equal mental capacity, and cite *Graffenstein v. Epstein*, 23 Kas. 443, in support thereof. We, too, cite this case and urge a careful consideration thereof.

Counsel seek to make Susan Knabe incompetent to testify as to the duress, and cite *Anderson v. Anderson*, 9 Kas. 112, in support of their effort therefor, and thus class the elements of actual duress, on the part of an insane husband, as a confidential communication between himself and wife, in reference to which the wife cannot testify. An insane husband cannot make a confidential communication to his wife, under the rule suggested in that case.

Counsel refer to *Gribben v. Maxwell*, 34 Kas. 8, and quote therefrom, and thereby make the untenable proposition that the case cited is authority here, and that the representatives of Knabe must place the parties, Myers at least, *in statu quo*, before they can prevail. We have ever been anxious for the application of the principles *in statu quo*, and will meet them more than half way. In 1 Parsons on Contracts, chapter 20, the principles as to some of the issues in this case are discussed; and in *Crowther v. Rolandson*, 27 Cal. 377, we find a case absolutely in point, in which insanity is sustained upon the testimony of one witness as to facts at the time of and before the conveyance, and two or three as to facts after the conveyance.

The opinion of the court was delivered by

JOHNSTON, J.: On March 28, 1885, George Knabe purchased from S. E. Myers a fractional quarter section of land in Elk county, and the price was $2,500. A cash payment of $1,000 was made to Myers, and, to secure the payment of the balance, Knabe and his wife united in the execution of a mortgage, which remains unpaid and unsatisfied. Immediately after the purchase, Knabe took possession of the land, built a large house thereon, and made other improvements. On August 11, 1886, he was adjudged insane, and since that time he has been confined in an asylum. T. S. Cook was duly appointed as his guardian, and has continued to act as such. The balance of the purchase price was due six months after the time of purchase, and default being made, an action was brought by Myers, on December 18, 1888, to recover the remainder and to foreclose the mortgage.

The defense was, that at the time of making the mortgage George Knabe was of unsound mind and incapable of making the contract, and that his condition was well known to Myers. It was also alleged that Myers fraudulently induced Knabe, who was in a demented condition, to pay $2,500 for land not worth more than $1,200. In a separate answer, Susan, the wife of George Knabe, pleaded duress, alleging that the mortgage was executed by her under the influence of fear and threats made against her life by her husband; but little, if any, testimony was offered, however, to sustain this defense. The jury found generally in favor of the defendants, and the following special findings of fact were returned:

"1. Was the defendant George Knabe insane when he purchased the lands in controversy from the plaintiff, Myers, in the month of March, 1885? A. Yes.

"2. If the jury answer the first question in the affirmative, did the plaintiff, Myers, know at the time of the sale of the lands to defendant George Knabe that he was insane? A. Yes.

"3. When did the defendant George Knabe become insane? A. At the time he had the typhoid fever.

"4. Did the plaintiff Myers act in good faith in the sale
of the lands in controversy to the defendant?   A.  No."

Errors are assigned upon the rulings of the court in the
admission of testimony; and it is further contended that the
testimony offered is wholly insufficient to justify the verdict
and judgment.   The main contention in the trial related to
the sanity of Knabe when the mortgage was executed, and,
if found insane, whether Myers knew or had reason to know
of his incapacity.   He moved from Ohio to Kansas and pur-
chased the land within two days after his arrival here.   In
1882, while in Ohio, he had an attack of typhoid fever, and
some of the witnesses stated that after that time he showed
signs of insanity.   Some witnesses who saw him shortly after
he reached Kansas testified that he acted strangely, and showed
symptoms of an impaired mind.   He carried on the farm and
improved the same, and controlled and managed his own busi-
ness for more than a year after his arrival in Kansas.   As-
suming, however, that there is sufficient testimony to sustain
the finding that he was of unsound mind when the land was
purchased and the mortgage given thereon, it is difficult to
find evidence showing that Myers knew that he was incapable
to contract, or that any indications of incapacity were brought
to his attention.   A contract or conveyance made fairly and
in good faith with a lunatic who is apparently sane, and before
any finding of lunacy is made, cannot be annulled by a mere
showing of incapacity at the time it was made.   If the other
party entered into the contract without any knowledge of the
insanity, his equitable rights must be protected before there
can be a rescission or annulment.   (*Gribben v. Maxwell*, 34
Kas. 8; *Leavitt v. Files*, 38 id. 26.)

We fail to find evidence of any remark made by Knabe to
Myers, or in his presence, or any act which was brought to
his attention, which would indicate unsoundness of mind.
The negotiations did not consume much time, and Cook, who
was then the friend and is now the guardian, was with them
throughout the transaction, says he saw nothing which would
have caused him to hesitate to trade with Knabe, and noth-

ing which would make Myers hesitate about selling the land to Knabe or cause him to suspect insanity. Mrs. Knabe says that, while the deed was being drawn up, in the office of a lawyer, she told her husband that she did not want to execute the papers, and that he uttered a threat against her life if she did not. It does not appear that this statement, if made, was heard by anyone other than herself. Without deciding, however, that there is absolutely no testimony upon which to rest this finding, it may at least be said that it is very unsatisfactory, and that the incompetent testimony which was admitted over objection may have influenced the jury in making the finding. The witness Lamb was permitted to testify before the jury what Harrod said respecting the sanity of Knabe. The statement of Harrod which was repeated was that Knabe's mind was not right; that he could not hold him to a conversation in regard to lumber which he was purchasing. Another witness was permitted to testify what he had said to a woman with respect to the sanity of Knabe, and repeated the statement that he would not sell land to him because he believed him to be crazy. A motion to strike out this hearsay statement was overruled by the court. Some of the witnesses were permitted to testify respecting his actions and conduct long after the transaction in question was had, and when the fact that he had subsequently been adjudged insane was admitted.

Under the circumstances of this case we regard these errors to be prejudicial, and from an examination of the whole record we believe there should be another trial of this cause. The judgment of the district court will be reversed, and the cause remanded for a new trial.

All the Justices concurring.