EDWARD G. CUNDALL, Sheriff, *vs.* FRANCIS S. HASWELL.

WASHINGTON—JANUARY 18, 1902.

PRESENT: Tillinghast, Rogers, and Douglas, JJ.

(1) *Executory Contracts.    Lunatics.    Void and Voidable.*

An executory contract made with a person of unsound mind is voidable at the election of the latter or his guardian *ad litem.*

ASSUMPSIT. The facts are stated in opinion. Heard on agreed statement of facts. Judgment for defendant.

TILLINGHAST, J. This is assumpsit to recover the sum of $500, the same being the amount bid by the defendant for certain real estate at an execution sale thereof.

The case is before us on an agreed statement of facts, which facts, in so far as they are material to our decision, are to the following effect:

The plaintiff, in his capacity as sheriff, held an execution against one John Uniac, Jr., for service, in the sum of $20.67. He duly levied said execution on the real estate in question, and advertised the same for sale thereunder. The defendant in this case was present at said sale and bid off the property for the sum of $500, his bid being the first and only bid thereon. The plaintiff thereafterwards duly prepared a sheriff's deed in accordance with the terms of the sale, and requested the defendant to accept the same and pay the amount bid by him for the property, but he refused so to do. The value of said real estate was not more than $150.

The defendant is sixty-five years of age; he has been an active and successful business man, but in recent years his health has been poor, and in June, 1899, he was twice stricken with cerebral hemorrhage, and has since suffered from cerebral embolism. When first afflicted with said hemorrhage he remained unconscious for more than a week, and he has done but little business since. According to his physician's statement he has suffered continuously since said attacks from mental inhibition bordering on paresis. Said facts were unknown to the sheriff at the time of the sale, except that he had heard that the defendant had had a shock, but there was nothing in his appearance or conduct at the time of the sale to indicate any special mental incapacity. His physician had specially warned the family of defendant against allowing him to do any mental work whatever. He is incapable of continuous or connected thought. The plaintiff has been tendered the amount due on said execution, together with all costs thereon, and also an amount sufficient to cover all costs

of advertising, posting notices, costs of sale, sheriff's fees, etc. The sheriff has adjourned said sale from time to time, and kept the lien on said premises alive pending this action. Neither the plaintiff in the judgment suit nor the plaintiff in this suit will suffer by the non-acceptance of said deed by this defendant, provided the amount due on said execution, with costs, interest and expenses, etc., be paid.

The defendant was never under guardianship, and no proceedings were ever instituted to place him under guardianship. A guardian *ad litem* has been appointed for him in this case. See *Atwood* v. *Lester*, 20 R. I. 660.

In view of these facts the parties to the action propound the following questions for our decision, namely :

1. Can said action be maintained for the full amount of said bid, and should judgment be rendered accordingly ?

2. If not for the full amount of said bid, can the plaintiff recover any sum from the defendant, and if so, what sum ?

The pleas interposed by the defendant are (1) the general issue, and (2) special pleas setting up the mental incompetency of the defendant to do business, and also setting up certain serious and grave mistakes made by him, in connection with the making of said bid, owing to his mental incapacity to comprehend the nature of the transaction.

It is of the essence of a valid contract that there shall be a meeting of minds of the parties thereto ; and it therefore necessarily follows that, if one of the parties has no mind, they cannot "agree in mind." "But there is more difficulty," as said by Mr. Parsons in his work on contracts, Vol. 1, 8th Ed. *335, "when we consider the case of those who are of unsound mind, partially and temporarily, and inquire how the question may be affected by the cause of this unsoundness.

"Mere mental weakness, or inferiority of intellect, will not incapacitate a person from making a valid contract ; nor is it easy to define the state of mind which will have this effect. There must be such a condition of insanity or idiocy as, from its character or intensity, disables him from understanding the nature and effect of his acts, and therefore dis-

qualifies him from transacting business and managing his property."

Whenever such a condition is shown to exist, the contract entered into is clearly not binding on the party thus incapacitated. Being bereft of reason and understanding, such a person is considered incapable of consenting to a contract or of doing any other valid act. And although the contracts of such persons are not generally held to be absolutely void, but only voidable, "the law takes care effectually and fully to protect their interests, and will allow them to plead their disability in avoidance of their conveyances, purchases, and contracts." *Seaver* v. *Phelps*, 11 Pick. 304 ; *Mitchell* v. *Kingman*, 5 Pick. 431. And it is no answer to the setting up of such disability that the sane party, when contracting, was not apprised of the other's insanity and did not suspect it, and did not overreach such insane person or practice any fraud or unfairness upon him. *Seaver* v. *Phelps, supra ; Lincoln* v. *Buckmaster*, 32 Vt. 658. We think, however, that this statement of the law should be taken with the qualification that "where there has been no inquisition or adjudication of lunacy, a contract entered into upon an adequate consideration of which the lunatic has had the benefit, and made by the other contracting party in good faith, without fraud or undue influence, and without knowledge of the insanity or reason to suspect it, will be upheld against the lunatic where the parties cannot be put in *statu quo*. The liability of the lunatic in such cases is upheld, it has been said, not on the ground of the contract, but on the fact that the lunatic has received and enjoyed actual benefit from the contract, for which he ought in equity and justice to pay." 16 Am. & Eng. Ency. of Law, 2d Ed. 625, and cases cited in notes 3 and 4.

Thus in *Molton* v. *Camroux*, 2 Exch. 502, Pollock, C. B., said *inter alia :* "We think, however, that we may safely conclude that when a person, apparently of sound mind, and not known to be otherwise, enters into a contract for the purchase of property which is fair and *bona fide*, and which is executed and completed, and the property, the subject-

matter of the contract, has been paid for and fully enjoyed, and cannot be restored so as to put the parties in *statu quo*, such contract cannot afterwards be set aside either by the alleged lunatic or those who represent him."

In *Fitzhugh* v. *Wilcox*, 12 Barb. 235, Johnson, J., in speaking of contracts with lunatics, said :

" This branch of the law upon contracts with lunatics, the extent of the lunatic's liability to parties who enter into contracts with them, does not appear to be very well settled. It seems clear that the lunatic himself is liable upon an executed contract for articles suitable to his degree, furnished by a person who did not know of his lunacy and practiced no imposition upon him, and where the subject-matter of the contract cannot be restored so as to put the parties in *statu quo*. (Smith's Law of Contracts, 230 ; Dart on Vendors and Purchasers, 3 ; Chit. on Cont. 197 ; *Baxter* v. *Earl of Portsmouth*, 2 C. & P. 178 ; *Molton* v. *Camroux*, 2 W. H. & Gordon's Exch. Rep. 487.) It seems equally clear that the lunatic is not liable upon any contract where the other contracting party has taken advantage of his lunacy, whether executed or not. And I apprehend that a lunatic can never be made liable upon any executory contract which he or those who represent him seek to avoid. . . . The old common law doctrine of Coke and Littleton, that a lunatic would not be heard to stultify himself in avoidance of his contracts, is now everywhere exploded." See *Thornton* v. *Appleton*, 29 Me. 298 ; 10 Ency. Pl. & Pr. 1214, and cases in note 3.

" But the liability of the other party contracting with a lunatic, upon executory contracts, must depend upon the question whether the contract was voidable merely at the election of the lunatic or his heirs or representatives, or absolutely void. The distinction between the void and voidable contracts of a lunatic does not appear to be entirely settled upon authority, but I apprehend it will be found to be substantially this : that the deeds and contracts of a lunatic, made before office found, are not void but voidable, while those made afterwards are absolutely void."

The strong current of legal authorities in this country is to the same general effect. See, by way of illustration, *Scanlan* v. *Cobb*, 85 Ill. 296 ; *Burnham* v. *Kidwell*, 113 Ill. 425 ; *Boyer* v. *Berryman*, 123 Ind. 451 ; *Warfield* v. *Warfield*, 76 Ia. 633 ; *Gribben* v. *Maxwell*, 34 Kan. 8 ; *Rusk* v. *Fenton*, 14 Bush. 490 ; *Evans* v. *Horan*, 52 Md. 602 ; *Fitzgerald* v. *Reed*, 17 Miss. 94 ; *Riggan* v. *Green*, 80 N. C. 236 ; Witthaus & Becker, Med. Jur. Vol. 3, pp. 373–4 ; 16 Am. & Eng. Ency. of L. p. 603, and cases in note 7.

(1)     The law being as thus declared, it remains to apply it to the agreed facts before us and determine whether the action can be sustained.

It is agreed that from the time of said shocks the defendant has suffered from cerebral embolism, which, according to Gould's Dictionary of Medicine, " is the obstruction of an artery or capillary, usually by a blood clot or embolus, brought from another point by the blood current, and that around the seat of an embolus thrombosis occurs, with the production of an infract." In other words, using simply plain English, that in such case there is some lesion of the brain.

According to the statement of the defendant's physician, which is uncontradicted, the defendant has also suffered continuously, since said cerebral hemorrhages, from mental inhibition bordering on paresis. And it is agreed that he is incapable of continuous or connected thought.

We think it is clear that such a person is of unsound mind and hence insane, there being no distinction between the terms "insanity" and "unsoundness of mind." See Med. Jur. *supra*, 371.

While, unlike New York, Massachusetts, and some other States, we have no statute defining the terms "insane person," "lunatic," "*non compos mentis*," and "insane," so as to embrace all forms of insanity except idiocy, making said terms synonymous, yet our statute does provide (Gen. Laws R. I. cap. 26, § 6) that "The words 'insane person' shall be construed to include every idiot, person of unsound mind, lunatic and distracted person." The primary definition of

insanity, according to the Century Dictionary, is "unsoundness of mind." And that a person who is incapable of continuous or connected thought is unsound in mind would seem to be so self-evident and so manifestly true as to render argument thereon superfluous. We may add in this connection that the fact that the defendant bid the sum of $500 for said property when its value did not exceed the sum of $150, while by no means conclusive of unsoundness of mind on his part, yet, when taken in connection with his admitted mental condition, is certainly corroborative of such a state.

The contract sued on is an executory one, and hence the case falls clearly within those above cited, which hold that such a contract is voidable by a person of unsound mind.

As to the defendant's offer to pay said judgment, costs, etc:, we can only say that while we should be glad to see it carried out, yet, in view of the fact already found—that the defendant was incompetent to bind himself by the executory contract hereinbefore considered—it necessarily follows that, in the absence of any proof showing a change in his mental condition since then, he was also incompetent to bind himself by the subsequent offer of settlement. In short, the size of the contract cannot affect our decision thereon. If the defendant was insane, and hence incapable of making a $500 contract, he was also incapable of making a $60 contract.

It therefore follows that both of the questions propounded in the agreed statement of facts must be answered in the negative.

Judgment for the defendant, without costs.

*Nathan B. Lewis*, for plaintiff.

*Oliver H. Williams*, for defendant.