No. 18,795.

ELIZA J. PAGE, as Conservator, etc., *Appellant,* v.
GILBERT P. PIERCE et al., *Appellees.*

### SYLLABUS BY THE COURT.

1. JUDICIAL SALE—*Judgment Against Husband—Sale of Land in Name of Insane Wife—Inequitable—Sale Set Aside.* To enable a husband to close an option deal for certain land at a profit of $2200 a bank advanced him $2500, to secure which he assigned a lien on certain land in his wife's name, which lien had been decreed to him in his suit in which he was granted a divorce. Afterwards the decree of divorce was set aside on account of the insanity of the wife, but the assigned lien was preserved and the land ordered sold in satisfaction thereof. In the meantime the loan procured from the bank had been substantially paid and the bank had failed to avail itself of the opportunity to secure itself by recourse to properties of the husband, to which it might have looked. *Held,* that thus to subject the land claimed by the wife was under the circumstances inequitable and hence error.

2. JUDGMENT—*Two Journal Entries—Construed Together.* When a trial court has refused to expunge one of two journal entries of a judgment rendered, various motions, applications and hearings having been made and had in reference thereto, they will be treated as one record covering the points decided.

Appeal from Shawnee district court, division No. 1; ALSTON W. DANA, judge. Opinion filed April 11, 1914. Reversed.

*W. R. Hazen,* of Topeka, for the appellant.

*Clad Hamilton,* and *Clay Hamilton,* both of Topeka, for the appellees.

The opinion of the court was delivered by

WEST, J.: March 2, 1910, defendant Pierce was granted a decree of divorce from his wife, Lulu Pierce, giving him a lien for $1125.50 on a quarter section of land in Osage county which stood in her name. On the same day Pierce assigned $1000 of this lien to the Rossville State Bank to secure an indebtedness. The bank issued execution and the land was sold, and a motion made to confirm the sale. A Chicago attorney had sued the wife in Osage county for an attorney's fee, attaching the land in question, and on November 3, 1910, Lulu Pierce having been adjudged insane, the plaintiff as her conservator brought a suit to set aside the decree of divorce and enjoin the attorney from further action and to clear the land of all the liens growing out of the proceeding. The bank filed its answer and cross-petition, admitting the assignment of the $1000 lien, alleging that a few days before March 1, 1910, Pierce applied for a loan of $3000 to secure an option on certain land, and that he had paid the loan except $940.50, with interest from October 7, 1910, alleging that the land in question in the name of the wife was purchased with the money of Pierce and was in equity his property and subject to his indebtedness. At the conclusion of the trial the court found sufficient reason for setting aside the decree of divorce, and for enjoining the Chicago attorney. The eleventh finding was that long prior to the institution of the divorce suit Pierce purchased the Osage county land and took a deed thereto in the name of his wife; that there was no evidence to show that she paid anything for it or ever had any funds of her own, "and that she never had any other or greater right in or to said real estate except such as accrued to her through her marital relations to Gilbert P. Pierce." It was further found that in the fall of 1909 Pierce obtained an option on certain land, expiring March 1, 1910, and made application to

the bank for a loan to protect his right in such option, and agreed to assign his lien on the land, which lien had been agreed on in the divorce case, as security; that had he not been able to secure such loan and take advantage of the option the estate would have lost $2200 thereby, which sum was saved by means of such loan, the land involved in the option being conveyed by deed in blank delivered to the bank; that before the beginning of this suit his indebtedness had all been paid to the bank except $950.46, and the deed last mentioned had been delivered to him, leaving the assignment to the bank its only security for the note he had given for the balance due, which at the time of the trial had been reduced to $931.31; that the loan was made in good faith and used to protect the option, and that Pierce and wife had received the benefit thereof, and that the loan was made by the bank without any notice or knowledge of the insanity or claim of insanity with respect to Lulu Pierce, and it was concluded as a matter of law, among other things, that the bank was entitled to an equitable lien for the sum found due on such loan, and judgment was rendered accordingly, and that the land be sold for the satisfaction of such lien. After the sale was made, and a motion filed to confirm, the plaintiff moved to set aside on the ground that such sale was illegal, and that the judgment of the trial court granting a lien on the land and ordering the sale was without jurisdiction and void. On the hearing of these motions evidence was introduced touching the journal entries and the title of the land in question, the result being that the court found the proceedings regular in regard to the sale, and confirmed the same, but made no finding as to the ownership of the land as between the plaintiff as conservator and the defendant Pierce. From this order the plaintiff appeals. It seems that on May 11 findings of fact and conclusions of law were placed on file, and a memorandum on the trial docket indicated the sort of judgment and decree

already shown. On September 18 a journal entry was signed by the judge, and marked filed by the clerk, granting the lien as already indicated, and on October 16 there was filed in the clerk's office another journal entry substantially the same except that it contained a provision for the sale of the land for the satisfaction of the judgment. Various motions, applications and affidavits were made touching the question of journal entries, and the matter was repeatedly called to the attention of the trial judge, with the result that both entries still remain of record. The plaintiff contends that the court was without jurisdiction or power to give the bank a personal judgment against Pierce and a lien upon the land, and that the second journal entry directing a sale was void and should have been stricken from the record, and that the court erred in not determining the ownership of the land. There was testimony to show that Pierce's lien granted in the divorce case was agreed upon in advance by his wife's brother, who acted for her in the negotiations leading up to that decree and who knew about the money borrowed from the bank to take care of the option deal.

The trial court having permitted both journal entries to remain of record, it is not for this court to say that either shall be expunged, but rather to regard the two together as covering the points decided.

It is claimed that the court erred in refusing to determine which was entitled to a right of redemption, but as the divorce has been set aside and the relations of husband and wife still exist we hardly see how this was a material or necessary matter to be passed upon in this case.

While we find nothing to indicate that the bank acted otherwise than in the best of faith, still the evidence shows that after the loan was made with which to secure the option, and the deed in blank to the land procured had been delivered to the bank, this was returned to Pierce, who traded the option land for Kan-

sas City property, and that he still owned certain Rossville property worth $800. Also, that the sum borrowed by him from the bank was $2500, that he already owed a little over $500 which he had borrowed from time to time, and that $2700 was paid about October 7, 1910. So it seems that the debt for which the lien is sought to be retained as security is really not a part of the loan, but a general balance remaining from a course of dealing covering a number of years. Pierce's testimony touching the Osage county land was that he bought it of his wife's brother for $2700 and put the title in her name. The inference to be drawn from this would be that it was a gift (*Olson v. Peterson,* 88 Kan. 350, 357, 128 Pac. 191; *Clester v. Clester,* 90 Kan. 638, 135 Pac. 996), and certain evidence introduced by the plaintiff on the motion to set aside the sale indicated that a gift was intended.

The decree in the case in which the assigned lien was awarded to Pierce was set aside because the wife was shown to have been insane when the decree was rendered and for two or three years before, and, being under such disability, of course she would not be bound by the lien provision which formed a part of the decree, except upon the equitable theory that having received a benefit by reason of the loan for which the lien was assigned the court might refuse to set the decree aside unless the lender were protected. (*Gribben, Guardian, v. Maxwell,* 34 Kan. 8, 7 Pac. 584; *Leavitt, Guardian, v. Files,* 38 Kan. 26, 15 Pac. 891; *Myers v. Knabe,* 51 Kan. 720, 33 Pac. 602; *Hospital Co. v. Philippi,* 82 Kan. 64, 70, 107 Pac. 530.)

We are mindful of the fact that by means of the loan extended by the bank the estate of Pierce and wife was enhanced $2200, but the majority of the court are more impressed by the consideration that the debt for which the lien is claimed has been substantially paid, and by the further consideration that the bank could have

looked to the option land or to the Rossville and Kansas City properties for security, but did not, and that to hold the property claimed by the wife, under the circumstances, would seem inequitable.

Such being the conclusion reached after a careful consideration of all the facts, it follows that the order confirming the sale must be reversed, and it is so ordered.