**EMANUEL v. KANSAS CITY TITLE & TRUST CO. et al.**

No. 12155.

Circuit Court of Appeals, Eighth Circuit.

April 23, 1942.

Rehearing Denied May 27, 1942.

Raymond G. Barnett, of Kansas City, Mo. (John R. James, of Kansas City, Mo., on the brief), for appellant.

Arthur N. Adams, of Kansas City, Mo. (Arthur N. Adams, Jr., of Kansas City, Mo., on the brief), for appellees.

Before SANBORN and WOOD-ROUGH, Circuit Judges, and TRIMBLE, District Judge.

SANBORN, Circuit Judge.

The appellant was plaintiff in the court below, and the appellees were defendants. For convenience, the appellant will be referred to as plaintiff, and the appellees will be referred to as defendant.[1] The action was for damages for breach of an escrow agreement. The issues were, (1) whether the alleged agreement was entered into; (2) whether, if entered into, it was breached; and (3) the amount of damages sustained by plaintiff. The issues were tried and submitted to a jury, which returned a verdict for the defendant. After plaintiff's motion for a new trial was denied, he appealed to this Court from the judgment entered upon the verdict.

■ It is necessary first to determine what questions are before this Court. The plaintiff challenges the sufficiency of the evidence to support the judgment for the defendant. He made no motion for a directed verdict. He asserts that, because of the attitude of the trial court, disclosed by statements made when the defendant moved for a directed verdict, it would have been useless for plaintiff to have made such a motion. But if the plaintiff intended to appeal in case the verdict went against him and to challenge the sufficiency of the evi-

dence to support a judgment for the defendant, it was essential that he request the trial court to direct the jury to return a verdict in his favor and that he secure from that court a ruling upon his request. In the absence of such a request and ruling, the question of the sufficiency of the evidence to support the verdict and judgment is not subject to review by this Court. Ayers v. United States, 8 Cir., 58 F.2d 607, 608; Combs v. United States, 8 Cir., 65 F.2d 787. This Court is a court of review and is without jurisdiction to retry an action such as this and to enter the judgment which it thinks should have been entered in the trial court. Geiger v. Tramp, 8 Cir., 291 F. 353, 355; United States v. Washington Dehydrated Food Co., 8 Cir., 89 F.2d 606, 609, 610; Elzig v. Gudwangen, 8 Cir., 91 F.2d 434, 444. We are therefore precluded from concerning ourselves with the question of the sufficiency of the evidence to support the judgment.

■ The plaintiff asserts that the court erred in denying his motion for a new trial. Under the practice in the Federal courts, such a motion is addressed to the discretion of the trial court, and its action thereon is not subject to review. Fairmount Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 481, 53 S.Ct. 252, 77 L.Ed. 439; Elzig v. Gudwangen, 8 Cir., 91 F.2d 434, 436; State of Minnesota v. United States, 8 Cir., 125 F.2d 636, 638.

The remaining points, then, which are for consideration in this case are those directed at the instructions of the court. The plaintiff asserts that the court, in its instructions, misstated the terms of the contract which the plaintiff asserted he had with the defendant, and that it was error for the court to give to the jury the usual instruction to the effect that they were the sole judges of the credibility of the witnesses and of the weight of the evidence.

■ In order that the situation which confronted the trial court may be visualized, it is necessary to give a general outline of the facts which gave rise to the controversy. The plaintiff owned 110 acres of land in Jackson County, Missouri. In 1924 he and his wife had given a first mortgage upon it for $5,000 due October 10, 1934. In 1926 they had contracted to sell 70 acres to a man by the name of Bales,

---

[1] Appellee Kansas City Title Insurance Company is the successor of Kansas City Title & Trust Company.

who agreed, as a part of the purchase price, to pay off the first mortgage and to pay taxes on the 110 acres. The terms of the contract were such that, if they were carried out, the mortgage would be paid off at its maturity date, Bales would have 70 acres, and the plaintiff and his wife would have a 40-acre tract free of incumbrances. This 40-acre tract was improved and was plaintiff's home. Bales assigned his contract to Marion D. Waltner, who undertook to carry it out. He had not by October 10, 1934, paid off the mortgage or reduced it, but he had paid interest. An extension of the mortgage for one year was procured from the Continental Illinois Bank & Trust Company (hereinafter called the Bank), which held the mortgage as trustee. On October 9, 1935, Waltner notified plaintiff that he was ready to carry out the Bales contract and to pay off the mortgage if plaintiff would repay a $100 loan which Waltner had made him and would reimburse the Bank for an insurance premium. The plaintiff made arrangements to secure the necessary funds. Waltner had arranged with the Bank that it accept in part payment of the $5,000 mortgage a mortgage for $3,500 covering the 70 acres which he was to acquire when the $5,000 mortgage was paid and released. On October 14, 1935, the Bank sent to Eaton R. Johnson, its field representative, the $5,000 note and mortgage with accompanying papers. It also enclosed a note and a mortgage for $3,500, covering the 70 acres, to be signed by Mary V. Blevins (the person designated by Waltner to take title to the 70 acres), and directed that Waltner, also, was to sign the note. The Bank in its letter of transmittal gave to its representative instructions that plaintiff and his wife were to deed the 70 acres referred to to Mary V. Blevins; that $1,846.20 ($1,500 of principal, $300 interest, and $46.20, insurance premium) was to be collected and remitted in Chicago exchange, that taxes on the entire 110 acres for 1935 and prior years were to be paid by Waltner together with all expenses and recording fees, and that the abstract of title was to be continued to show the completed transaction. The letter contained the following: "To facilitate the closing of this transaction it could be handled under a guarantee policy from the Kansas City Title and Trust Company." Johnson turned over the papers and the letter of instructions which had been sent him by his principal to the defendant to work out the proposed arrangement for the satisfaction and release of the $5,000 mortgage. On or about November 6, 1935, Waltner deposited $1,750 with the defendant. On November 7, 1935, plaintiff and his wife, at Johnson's suggestion, called at defendant's office and were advised that it would be necessary for them to deposit $153.20,—$100 to repay Waltner for a loan, $7 to correct a title defect, and $46.20 to reimburse the holder of the mortgage for money advanced as an insurance premium. On November 8, 1935, the plaintiff paid to the defendant $153.20, and executed and left with it a deed to Mary V. Blevins covering the 70-acre tract described in the Bales contract. On November 14, 1935, the defendant wrote the plaintiff that Waltner "feels" that plaintiff should pay the cost of continuing the abstract, $35.50; the release fees for two mortgages, $1; interest on the first mortgage from October 10 to November 20, 1935, $12; and one-half of the escrow fee, $7.50; a total of $56. The defendant asked the plaintiff to deposit a $500 second mortgage, which had been paid but had not been released of record. On November 15, 1935, plaintiff delivered this second mortgage, and, after some protest, paid the defendant $56. On December 2, 1935, the plaintiff was advised by Johnson that Waltner had not paid the taxes on the 110 acres of land, and that the holder of the $5,000 mortgage was losing patience. On December 3, 1935, plaintiff called at defendant's office and was told that Waltner had demanded the return of his $1,750 and that the defendant intended to return his deposit to him and to return all papers and other deposits to those to whom they belonged. The plaintiff protested against the return of Waltner's $1,750 deposit, refused to accept the return of the money which plaintiff had deposited, and demanded that defendant retain all papers and moneys which had been deposited with it. The defendant returned the $1,750 to Waltner and returned the unreleased $5,000 mortgage to the Bank. This mortgage was subsequently foreclosed, and the 110 acres of land were sold at public sale for $4,010, leaving a deficiency for which the plaintiff was liable. The plaintiff was unable to redeem, and lost the property. His claim in this suit was that the defendant had promised and agreed that if he would make the payments which he did make, "it would hold all of said moneys and said documents, to-

gether with the sum of $153.20, theretofore paid to said defendant by plaintiff, and the documents theretofore delivered to it by said Waltner for the purpose of discharging the aforesaid $5,000.00 mortgage, and therewith would secure and procure the discharge of said mortgage and the release thereof."

The plaintiff's evidence tended to establish the existence of the agreement alleged, and that the 40-acre tract which plaintiff lost was then worth $200 an acre. The defendant's position at the trial was that the plaintiff's evidence was insufficient to justify the submission of the case to the jury, and it moved for a directed verdict. The court ruled that the issues were for the jury. The case was submitted mainly upon instructions requested by plaintiff. Under these instructions, the jurors were told that if they found that defendant "promised and agreed with plaintiff, that if plaintiff would pay to defendant certain items amounting to and in the aggregate sum of $153.20, and deliver to and place in the hands of defendant a warranty deed, executed by plaintiff and his wife, to and conveying said seventy acre tract of land, and running to and in favor of a grantee to be named by the said Waltner, then defendant would accept and hold the same as agent for plaintiff, and hold the said sum of $1750, and other items deposited with defendant by said Waltner, and secure the release of record of the aforesaid $5,000 first mortgage note and encumbrance upon and against the plaintiff's said land;" and that if they further found "that defendant notified and requested of plaintiff that he should pay to defendant certain other items, in the aggregate sum and amount of $56.00, including an abstract fee of $35.50 to the defendant, and an escrow fee of $7.50 to the defendant, and that defendant requested that plaintiff deliver to defendant for the purpose of release a $500 second mortgage note and encumbrance upon and against plaintiff's said land so that the same could be released of record, and that defendant promised and agreed with plaintiff that if plaintiff would pay to defendant said additional sum and amount of $56.00, and delivered to defendant said $500 second mortgage note and encumbrance, the defendant would hold all of the documents and instruments delivered by plaintiff to defendant, and said addi-

tional sum of $56.00, together with the sum of $153.20 theretofore paid to defendant by plaintiff, and would hold all the said sum of $1750, paid to defendant by said Waltner, and the certain documents and instruments delivered to defendant by said Waltner, all for the purpose of releasing and discharging the aforesaid $5,000 first mortgage note and encumbrance thereof from and against plaintiff's said land and would effect such release;" and that if they further found that defendant knew that plaintiff was unable to pay off the $5,000 mortgage, and that, in spite of plaintiff's protest, defendant turned back the $1,750 deposited by Waltner and the first mortgage, which was later foreclosed, "then the plaintiff herein is entitled to recover his loss and damage from the defendant herein, and your verdict shall be for and in favor of the plaintiff herein and against the defendant herein." The court then said, using its own language and not that requested by plaintiff:

"Now, gentlemen, what I have read to you, I am sure you grasped its essentials, although it is very difficult for me, at least, and I think for all men, to pay very close attention or to retain in memory what is read by somebody else. Let me state orally the substance of what I have read to you. What I have read to you states what was the agreement which the plaintiff claims the plaintiff made with the defendant. The substance of that agreement, its high points, are these:

"Plaintiff says that the agreement which the defendant made with him was this: That if he would pay to the defendant certain small items of money, one $153.20 and one $56.00, which such item included an escrow fee of $7.50 which was intended for the use and benefit of the defendant—I say the plaintiff says that the agreement was that if he would pay the defendant these sums of money and deliver to the defendant certain instruments, a warranty deed and certain other instruments, that then the defendant agreed with him absolutely and without any condition that it would see to it that the $5,000.00 mortgage note which he originally had signed and which was secured by a mortgage on 110 acres of land would be released and that he would have no further obligation upon that note and that 40 acres of his land would be entirely free from incumbrance.

"That is the substance of what I have read to you, that is the agreement which the plaintiff says was made with the defendant."

The court stated to the jury that the defendant's contention as to the nature of the agreement it had entered into with plaintiff was that if Waltner would do what he had agreed with the plaintiff and with the holder of the $5,000 mortgage to do, and that if the things insisted upon by the holder of the mortgage were done, then, and then only, would the mortgage be released. The court then gave the following instructions: "I express no opinion, although under the law I have the right to do that, as to which one of these contentions is the true one. That is for your decision. If the plaintiff has proved the agreement, as I have described it in what I have read to you and in what I have summarized orally, your verdict must be for the plaintiff, but if there was no such agreement at all or if there was some other kind of an agreement, then your verdict must be for the defendant in this case."

After delivering its instructions, the court asked plaintiff's counsel if he had any exceptions. He stated that he had two: "One is to that portion of the charge where your Honor undertook to state orally the effect of the contract as it had been referred to in the language of the written instruction, in that there your Honor said that it was a question as to whether this contract had been made by the Kansas City Title & Trust Company to release that mortgage upon the payment by the plaintiff of the items, first of $153.20 and then the item of $56.00, which omitted and left out what seems to me to be the primary element of that contract, to wit: that they would hold all funds and documents in their hands for the purpose of effecting such a release; particularly do I refer here to the fact that they had agreed, under our interpretation, to hold the $1750.00 for that purpose, and that that element of holding these things constitutes one of the elements of the contract that was entered into."

The court, in response to that exception, said: "You will note that exception, Miss Feltenstein. As to that, I say that the thing with which the plaintiff was concerned was the release of the mortgage and his release from the note and that that was the ultimate object from his standpoint. How that result was to be accomplished is merely incidental. The exception is allowed. Have you any further exceptions?"

We think that the court did not err in the statement made to the jury as to the substance of the agreement which the plaintiff asserted that he had with the defendant. According to the plaintiff's pleading and his evidence, the obligation assumed by the defendant was to bring about the release of the $5,000 mortgage. That was clearly the object of the agreement which the plaintiff asserted was entered into. The jury could not possibly have been misled as to the nature of the plaintiff's claim. It had heard his evidence, had listened to the argument of his counsel, and had heard the detailed instructions read by the court in the language requested by plaintiff. The jury knew that it was plaintiff's contention that in releasing the money deposited by Waltner, and thus disabling itself from using that money to secure the release of the $5,000 mortgage, the defendant had breached its agreement with the plaintiff. Taking the charge as a whole and considering it in the light of the circumstances, it would be captious to say that the jury went astray because the court, in stating the substance of the alleged agreement, did not refer to the holding of the papers and deposits.

We are also of the opinion that the court did not err in giving the usual instructions relative to the jurors being the sole judges of the credibility of the witnesses and of the weight of the evidence.[2] It is true that much of the

[2] The instructions were as follows:

"Gentlemen, you are the sole judges of the credibility of the witnesses and of the weight and value to be given to their testimony. In passing upon the credibility of any witness you have the right to take into consideration his conduct and demeanor upon the witness stand, his interest, if any, in the outcome of the case, the consistency of statements made by him upon the witness stand with statements made at other times and places as shown by the evidence in the case; the probability or lack of probability that his statements are true. All of these things you will take

evidence was not in dispute, but there was a direct conflict as to whether the plaintiff knew that the defendant was acting under the letter of instructions given by the Bank to its representative. Furthermore, it can not be said that all of the testimony given by the plaintiff and his witnesses was free from improbabilities. In Elzig v. Gudwangen, 8 Cir., 91 F.2d 434, 440, this court said: "It is elementary that in the trial of an action at law, the jurors are the sole and exclusive judges of the facts, of the credibility of the witnesses, and of the weight of the evidence. Evidence which is uncontradicted is not necessarily to be accepted as true. Its weight and the credibility of the witnesses who gave it are usually for the jury to determine."

While a jury is not free to disregard the uncontradicted evidence of unimpeached and credible witnesses, it is not obliged to accept as true and controlling, evidence which, although uncontroverted, might be regarded as unreasonable or improbable or from which reasonable men might honestly draw different conclusions. United States v. Washington Dehydrated Food Co., 8 Cir., 89 F.2d 606, 609, and cases cited. It is, no doubt, true that the falsus in uno, falsus in omnibus rule is not an appropriate instruction in every case, but it is to be noted that plaintiff's exception did not direct the court's attention to the inclusion of that rule in the instruction or ask its elimination. Even if the exception had done that, we would still be of the opinion that the propriety of stating the rule to the jury was for the trial court to determine. It would certainly be a rare case in which an appellate court would be justified in granting a reversal for the giving of an instruction such as that here complained of.

We are satisfied that if the judgment in this case is erroneous, as plaintiff asserts, it is because of errors of fact committed by the jury and not because any errors of law were committed by the court. Compare, Elzig v. Gudwangen, 8 Cir., 91 F.2d 434, 444.

The judgment is affirmed.

into consideration in passing upon the credibility of any witness. If you believe that any witness wilfully has sworn falsely to any material fact in testimony you are at liberty to disregard the whole or any part of that witness' testimony and you will give to the testimony of each witness just that weight and value you believe it is entitled to receive."