**ROSENBERG et al. v. BAUM et al.**
No. 3160.

Circuit Court of Appeals, Tenth Circuit.
Jan. 8, 1946.

James H. Ottman and Daniel L. Brenner, both of Kansas City, Mo. (Irvin Fane and Ted F. Houx, Jr., both of Kansas City, Mo., Joseph Cohen, of Kansas City, Kan., and Johnson, Lucas, Graves & Fane and Roach & Brenner, all of Kansas City, Mo., on the brief), for appellants.

Joseph J. Dawes, of Leavenworth, Kan., for appellees.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

BRATTON, Circuit Judge.

Harry Rabinovitz, hereinafter called Harry, and Birdie Rabinovitz, hereafter called Birdie, were husband and wife. They resided in Leavenworth, Kansas, and they did not have any children. Harry died testate in 1922. By the terms of his will, he nominated Birdie as executrix; directed that his debts and funeral expense be paid; directed that $100 per month be paid to his sister, Sara Rosenberg, so long as she should live, or until the death of his wife; and gave the rest and residue of his estate to Birdie, for her life, with full power to use, sell, and dispose of the whole or any part thereof as she might deem proper. Subject to these provisions, it was further provided in the will that if there should be any remainder of the estate at the time of Birdie's death it should go, twenty-five per cent to the testator's sister, Sara Rosenberg; twenty-five per cent to his sister, Emma Richman; twenty-five per cent to his niece, Alice Rabinovitz; and twenty-five per cent to his sister-in-law, Salma Miller, with provision that if she should be dead at the time of the death of Birdie, then such portion should go to the children of her body living at the time of the death of Birdie. The will contained other provisions which do not have any material bearing here. The will was admitted to probate in the probate court of Leavenworth County, and Birdie was appointed executrix. She filed an inventory and appraisement showing real and personal property of the estate. No claims were filed, the executrix did not file any reports or settlements, no orders were entered, and the proceeding is still pending. Birdie died testate in 1944. By her will, bequests were made to her sister, Cora Feilchenfeld, her brother, Emanuel Ettlinger, and her nieces Joan Miller and Marilyn Miller, daughters of Salma Miller who predeceased Birdie. The will was admitted to probate in the probate court of Leavenworth County, John Baum was appointed executor, and an inventory and appraisal was filed in the proceeding showing real and personal property in that county of the value of $37,000 and $56,972.-92, respectively. Ancillary proceedings were had in the probate court of Jackson County, Missouri, and Emanuel Ettlinger was appointed ancillary executor.

Sara Rosenberg, Emma Richman, and Alice R. Fradkin, nee Alice R. Rabinovitz, instituted this action in the United States Court for Kansas against Baum and Ettlinger, executor and ancillary executor, respectively, of the estate of Birdie, Ettlinger and Cora Feilchenfeld, as legatees under the will of Birdie, and Joan Miller and Marilyn Miller as legatees under the wills of both Harry and Birdie. The purposes of the action were (1) to impress a trust upon certain real estate which had been conveyed to Birdie, and (2) for an accounting in respect of the assets of the estate of Harry. Defendants prevailed and plaintiffs appealed. For convenience reference will be made to the parties in the manner in which they appeared in the trial court.

■ Although they prevailed in the court below, the defendants assert that the court lacked jurisdiction. They argue that the probate court of Leavenworth County had exclusive original jurisdiction of the estate of Harry and that the United States Court was without jurisdiction of the subject matter of the suit. It is settled law in Kansas that under the Probate Code of 1939, Laws Kan.1939, c. 180, the probate courts are vested with exclusive original jurisdiction of all matters incident and ancillary to the administration, management, control, settlement, and distribution of estates. Under the provisions of the code, the original jurisdiction of the probate courts was extended so as to invest them with all necessary legal and equitable power to deal judicially with the administration of estates. Foss v. Wiles, 155 Kan. 262, 124 P.2d 438; Dixon v. Fluker, 155 Kan. 399, 125 P.2d 364; Swisher v. Bouse, 155 Kan. 797, 130 P.2d 565; Egnatic v. Wollard, 156 Kan. 843, 137 P.2d 188; Burns v. Drake, 157 Kan. 367, 139 P.2d 386; Bitzer v. Smith, 158 Kan. 83, 145 P.2d 148.

■ ■ A United States Court does not have jurisdiction to entertain a proceeding purely of a probate character relating to the administration of the estate of a deceased person. Byers v. McAuley, 149 U.S. 608, 13 S.Ct. 906, 37 L.Ed. 867; Farrell v. O'Brien, 199 U.S. 89, 25 S.Ct. 727, 50 L.Ed.

101; Caesar v. Burgess, 10 Cir., 103 F.2d 503; Miami County National Bank v. Bancroft, 10 Cir., 121 F.2d 921; Harris v. Zion's Savings Bank & Trust Co., 10 Cir., 127 F.2d 1012, affirmed 317 U.S. 447, 63 S. Ct. 354, 87 L.Ed. 390. But where, as here, diversity of citizenship is present and the requisite amount is in controversy, a United States Court has jurisdiction to determine questions relating to the interests of heirs, devisees, or legatees, which may be adjudicated without interfering with the control of the probate court in the general administration of the estate. Waterman v. Canal-Louisiana Bank & Trust Co., 215 U.S. 33, 30 S.Ct. 10, 54 L.Ed. 80; Sutton v. English, 246 U.S. 199, 38 S.Ct. 254, 62 L.Ed. 664; Wells v. Helms, 10 Cir., 105 F.2d 402; Robinson v. Georgia Savings Bank & Trust Co., 5 Cir., 106 F.2d 944; Lathan v. Edwards, 5 Cir., 121 F.2d 183. And that jurisdiction can not be limited or curtailed by state legislation creating probate courts and vesting in them exclusive jurisdiction over the settlement of estates of decedents. Payne v. Hook, 7 Wall. 425, 19 L.Ed. 260; Miami County National Bank v. Bancroft, supra.

Coming to the merits, by warranty deeds executed and recorded in 1908, 1918, and 1921, respectively, certain lots in Leavenworth were conveyed to Birdie, and the legal title remained in her at the time of her death. Plaintiffs seek to impress a constructive trust upon the lots. They contend that the lots were acquired with money belonging to Harry; that Birdie and Harry agreed that she should hold the legal title in trust for him; and that the legal title is now held in trust for the benefit of the plaintiffs and the defendants Joan Miller and Marilyn Miller, legatees under the will of Harry. It is the adjudicated rule in Kansas that where real estate is purchased for a consideration paid by the husband and the conveyance is made to the wife, a presumption arises that it is intended as a gift from him to her. Olson v. Peterson, 88 Kan. 350, 128 P. 191; Clester v. Clester, 90 Kan. 638, 135 P. 996, L.R.A. 1915E, 648; Page v. Pierce, 92 Kan. 149, 139 P. 1173; Manhattan State Bank v. Haid, 97 Kan. 297, 155 P. 57. The further rule in that state is that where property is acquired for a consideration paid by one person and the title is taken in the name of another, a trust does not arise or result in favor of the former unless the two agree, without fraudulent intent, that the one to whom the title is conveyed shall hold the property or some interest in it for the benefit of the one furnishing the consideration. And the showing that the consideration was so furnished, the title so taken, and the agreement so entered into must be clear and convincing to the tribunal authorized to determine the controverted issue. Kull v. Pearl, 147 Kan. 329, 76 P.2d 790.

Recognizing these principles, plaintiffs endeavored to show that the lots were acquired with funds belonging to Harry and that Birdie and Harry agreed that she should hold the title in trust for him. Sara Rosenberg testified that Harry was a rich man, that he always had a lot of money, and that he contributed to the support of his relatives. Sara Rosenberg and Emma Richman testified that Birdie did not have any money or property at the time of her marriage and that she did not inherit any estate afterwards. Too, there was testimony that she did not follow any gainful employment during her married life. Sara Rosenberg, Emma Richman, Alice Fradkin, and Abe Rabinovitz, a nephew of Sara Rosenberg and Emma Richman and a cousin of Alice Fradkin, testified that they heard Harry state to his father that he had purchased the lots and had caused them to be conveyed to Birdie, and that Birdie thereupon stated that she held the title for him and would convey them to him at any time he desired. The court did not make any specific finding as to the source of the money with which the real estate was purchased, but the court expressly found that Birdie did not agree with her husband that she would hold the title in her name in trust for his use and benefit and did not agree to convey the property to him. In short, the court declined to give decisive credence to the testimony offered relating to the source of the money with which the property was acquired and as to the agreement between Harry and Birdie that she held title in trust for him. Plaintiffs argue that the testimony was not contradicted and that the court should have accepted and adopted it. Where unimpeached witnesses testify distinctly and positively to a fact and are not contradicted, their testimony should under ordinary circumstances be credited and have the effect of overcoming presumptions. But that rule is subject to qualifications. There may be such inherent unreasonableness or improbability in the statements made by the witnesses as to deprive them of credit, however positively made. Though

unimpeached, the witnesses may manifest such an interest in the question as to dilute their credibility. Their attitude may completely discredit the testimony. Physical facts may dispute it. And other circumstances may render it unworthy of belief. In such case the court or jury is not required blindly to adopt the testimony. Instead, the court or jury may in the exercise of sound judgment decline to give it decisive credence, though it is not contradicted by direct adverse testimony. Quock Ting v. United States, 140 U.S. 417, 11 S.Ct. 733, 851, 35 L.Ed. 501; Lowenstein v. I. N. Platt & Co., 2 Cir., 58 F.2d 173; United States v. Washington Dehydrated Food Co., 8 Cir., 89 F.2d 606; Goodyear Tire & Rubber Co. v. Federal Trade Commission, 6 Cir., 101 F.2d 620, certiorari denied, 308 U.S. 557, 60 S.Ct. 74, 84 L.Ed. 468; Emanuel v. Kansas City Title & Trust Co., 8 Cir., 127 F.2d 175. Viewing the testimony of the witnesses in the light of that rule and taking into consideration all of the facts and circumstances shown in the case, particularly that the lots were not included in the verified inventory and appraisal which Birdie filed, that from the time of the filing of the inventory until after the death of Birdie—more than twenty-two years—plaintiffs did not raise any question concerning the accuracy of the inventory and failed until after the death of Birdie to assert or indicate in any other manner a belief or understanding that she merely held the title in trust, it cannot be said that the court erred in failing to find that the lots were acquired for a consideration furnished by Harry and that Birdie agreed with Harry to hold the title in trust for him.

Plaintiffs also seek to impress a trust upon certain lots in Kansas City, Missouri. It is their contention that Birdie acquired these lots with funds belonging to the estate of Harry, and that they are held in trust for the benefit of plaintiffs and the defendants Joan Miller and Marilyn Miller, legatees under Harry's will. In 1930, Birdie purchased a note in the sum of $5,000, secured by a deed of trust on part of the lots. In 1936, the deed of trust was foreclosed and she became the purchaser at the trustee's sale. In 1930 or 1931, Birdie purchased a note in the sum of $16,000, secured by a deed of trust on other lots. In 1933, the deed of trust was foreclosed and she purchased the lots as the sheriff's sale. In 1936, Birdie purchased a third note in the sum of $15,000, secured by a deed of trust on still other lots; and in 1939, the lots were conveyed to her in satisfaction of the debt. These several properties have stood in the name of Birdie ever since they were acquired in the manner outlined. The court found that Birdie acquired the lots with her own funds and not with funds belonging to the estate of Harry. It is to be noted that the three notes were acquired eight years, eight or nine years, and fourteen years, respectively, after the death of Harry. The face amount of each note was shown, but there was no showing in respect to the amount paid for them, and there was no direct evidence as to the source of the money or other consideration with which they were purchased. The evidence relating to the matter was indirect, meager, and sketchy. The evidence and the inferences fairly to be drawn from it presented an issue of fact as to whether the funds or other consideration paid for the notes belonged to the estate of Harry or to Birdie individually. That issue was for the trial court. The court found it against the plaintiffs and the finding is not clearly erroneous. Accordingly, it must stand on appeal. Patton v. Lewis, 10 Cir., 146 F.2d 544; Gerson v. Anderson-Prichard Production Corp., 10 Cir., 149 F.2d 444; Flores v. Bruesselbach, 10 Cir., 149 F.2d 616.

The court found that at the time of the death of Harry, the total value of his estate was $43,276.13; and that under the power and authority granted by the terms of the will, Birdie sold and disposed of all of the assets of the estate listed and described in the inventory for $52,500, in cash. Those facts were stipulated and the findings are not challenged. The time of the sale or sales is not shown. The court further found that Birdie expended $28,445 in payment of debts which Harry owed at the time of his death, and that she expended the further sum of $974.75 for funeral expenses, aggregating $29,419.75. The court further found that Birdie made the monthly payments of $100 to Sara Rosenberg, as directed in the will, beginning in 1922 and ending in 1944, totaling $25,500. That finding is not attacked. The court further found that Birdie expended for her support, maintenance, comfort and travel the sum of $100 per month from the date of the death of Harry until his estate was consumed. Based upon those findings, the court further found that the entire estate of Harry was consumed and used up prior to Birdie's death, and that at her death no assets of any

kind remained in the estate for distribution to the remaindermen under his will.

■ Plaintiffs challenge the allowance of credit for payment of some of the debts of Harry on the ground that there was no sufficient proof affirmatively showing that the payments were actually made. It would not serve any useful purpose to detail the evidence relating to each separate item. It is enough to say that there was direct evidence of some of the payments and circumstantial evidence of the others. A careful examination of the record is convincing that the finding of the court in respect of the payments was not clearly erroneous. Therefore it is not to be overturned on appeal. Patton v. Lewis, supra; Gerson v. Anderson-Prichard Production Corp., supra; Flores v. Bruesselbach, supra.

■ The allowance of credit for all of the amounts paid by Birdie in the discharge of obligations of the estate of Harry and in settlement of the funeral expenses is attacked on the further ground that claims were not filed in the probate proceeding, and the probate court did not allow the claims or ratify their payment. Plaintiffs say that an executrix cannot claim credit for payment of alleged claims against the estate which have not been presented to, allowed by, or ratified by the probate court having jurisdiction of the estate. Section 22-709, General Statutes of Kansas 1935, provides that no probate court shall allow any demand against an estate unless the claimant makes oath in open court or files with the claim an affidavit stating that, to the best of his knowledge and belief, credit has been given for all payments and offsets, and that the balance claimed is justly due; and section 22-711 provides that an executor or administrator may pay in its regular order any duly verified demand against the estate not in excess of $50. Payment of a claim of more than $50 without allowance is contrary to law and made at the hazard of the executor or administrator. Wright v. Stage, 86 Kan. 475, 121 P. 491; In re Kappelman's Estate, 101 Kan. 654, 168 P. 876. But it has been held that where the assets are sufficient to pay all claims in full, the probate court may subsequently ratify the action of the executor or administrator in making payment of a just debt without approval and give him credit for the amount. In re Kappelman's Estate, supra. It is to be remembered that this is an action in equity, and it can be maintained only on equitable grounds. Young v. Scott, 59 Kan. 621, 54 P. 670. Having found that the funds were expended in payment of just demands against the estate, to disallow credit for them now would in effect exact double payment. The technical irregular payment of the demands without their allowance by the probate court did not give rise to any present substantial injury to the remaindermen which a court of equity is required to redress by disallowing credit for the amount.

■ Plaintiffs urge in effect that all or some of the assets reflected in the inventory and appraisal filed in the probate proceeding affecting the estate of Birdie are in fact assets of the estate of Harry. According to the inventory and appraisal, Birdie left an estate in excess of $100,000. Plaintiffs ask pointedly where she could have accumulated an estate of that size. The lots in Leavenworth deeded to her long prior to the death of Harry represent approximately $37,000 of the amount. The source of the balance of the estate is not clear. It may well be that Henry's life was insured in a substantial amount with Birdie as the beneficiary. The record is completely silent in that respect. And it may be that Birdie accumulated the estate by her own foresight and judgment. Birdie sold for $52,500 the assets listed in the inventory and appraisal filed in the probate proceedings of the estate of Harry, but the increment to the estate by way of earnings or otherwise is not shown persuasively. The only things shown with certainty are that Birdie received $52,500 for the original assets, that she paid out $29,419.75 in settlement of Harry's debts and funeral expenses, that she paid out $25,500 to Sara Rosenberg, the two aggregating $54,919.75, and that her living expenses were about $100 per month. It thus appears that the case is freighted with elements not established with mathematical exactness. But in a case of this kind, involving the conduct of Birdie extending over a period of twenty-two years, where records are not only meager but almost nonexistent, a reasonable latitude must be allowed the trial court for well founded inference, deduction, and conclusion. A court of equity in such circumstances cannot be restricted to rigid and inflexible certainties. It must employ and be guided to some extent by reasonable inferences and approximations. On the whole, we are unable to say that the finding of the court that at the death of Birdie no assets remained in the estate of Harry for distri-

bution to the remaindermen under his will was clearly wrong. And therefore it will not be disturbed here. Patton v. Lewis, supra; Gerson v. Anderson-Prichard Production Corp., supra; Flores v. Bruesselbach, supra.

■ Plaintiffs contend that an executrix occupies a fiduciary relation of the highest order; that she is under the duty to keep and render clear and accurate accounts; that the burden is on her to exhibit a clear and accurate account, especially where she has commingled funds of the estate with his personal funds; that Birdie failed to keep clear and accurate accounts as executrix; that she commingled funds of the estate with her own funds; that the burden rested on the defendants to exhibit clear and accurate accounts; and that they failed to discharge the burden. As previously stated, Birdie did not file any reports in the probate court, and it is fairly apparent from the record that she failed to keep separate accounts as executrix but commingled the funds of the estate with her personal funds. It is held in Kansas that an executor or administrator occupies a fiduciary relation of the very highest order in respect of the funds belonging to the estate; that it is his duty to keep the funds separate from his own funds; that when the report of account of an executor or administrator is challenged, or an action is brought against him by an administrator with the will annexed, an administrator de bonis non, or an heir or legatee, the burden rests upon him to exhibit a clear and accurate account; and that in such an action or proceeding, any credits, the accuracy of which is not sufficiently established by him, will be rejected. Vincent v. Werner, 140 Kan. 599, 38 P.2d 687; In re Park's Estate, 151 Kan. 447, 99 P.2d 849. Where he fails to pay out funds in his hands belonging to the estate when ordered, he may be charged with interest from the time of his neglect to obey the order of the court. Wollard v. Peterson, 145 Kan. 631, 66 P.2d 375. And where he commingles funds belonging to the estate with his own personal funds, sells to the estate bonds belonging to himself individually, at a profit, and fails to keep clear and accurate accounts, he may be surcharged with compound interest on the trust funds which he commingled with his own. Vincent v. Werner, supra. But Birdie did not fail to obey any order of the court, and there was no indication that she sold personally owned property to the estate at a profit or committed any other wrong of that kind.

■ Birdie was more than executrix of the will of Harry. Under the terms of the will, she had a life estate with power of disposal. As life tenant with power of disposal, she could convey the property belonging to the estate. Ernst v. Foster, 58 Kan. 438, 49 P. 527; Greenwalt v. Keller, 75 Kan. 578, 90 P. 233; Pearson v. Orcutt, 107 Kan. 305, 191 P. 286. It was a qualified power of disposition, in that she could not make a gift of it or dispose of it by will. Greenwalt v. Keller, supra. But otherwise she could control and dispose of it in the usual and ordinary manner as though she owned it in fee. Otis v. Otis, 104 Kan. 88, 177 P. 520. She was authorized to pay Harry's debts and funeral expenses, make the monthly payments to Sara Rosenberg, support and maintain herself according to her own pleasure, and use the balance in any manner that she saw fit, except that she could not dispose of it by gift inter vivos or by will. It was only in the event that she failed to exercise her right of disposal, or exercised the right and acquired other property which was held as part of the estate, that any property passed to the remaindermen at her death. Postlethwaite v. Edson, 98 Kan. 444, 155 P. 802; Scott v. Gillespie, 103 Kan. 745, 176 P. 132, certiorari denied 249 U.S. 606, 39 S.Ct. 289, 63 L.Ed. 799; Otis v. Otis, supra. And in a case of this kind for an accounting, brought by the remaindermen under the will against the personal representatives of the estate of the deceased executrix, who was also life tenant of the estate with power of disposition, the burden rested upon the plaintiffs to show that the property belonging to the estate had not been consumed or exhausted at the time of the death of the life tenant. They were required to show that assets belonging to the estate existed at the death of the life tenant and thereupon passed to the remaindermen. Seward v. Davis, 198 N.Y. 415, 91 N.E. 1107; In re Welsh's Estate, 239 Pa. 616, 86 A. 1091; Cf. Swarthout v. Ranier, 143 N.Y. 499, 38 N.E. 726. Plaintiffs failed to discharge that burden and therefore were not entitled to recover on accounting.

■ The remaining contention which merits a word is that a judgment, decision, or determination by a judge or chancellor prior to a hearing of all the evidence amounts to a deprivation of property without due process. The argument is that the

court prejudged at least one issue in the case. Certain comments or observations of the court and certain questions propounded to witnesses are emphasized in support of the point. The presiding judge made pertinent comments or observations from time to time and also propounded relevant questions to witnesses, but there is not the slightest basis for the contention that any justiciable issue was prejudged or that the trial was conducted in an unfair manner. On the contrary, the trial judge of long experience presided with becoming impartiality and fairness.

The judgment is affirmed.